[Civ. No. 4543.  Second Appellate District, Division Two.—September 5, 1924.]

STANLEY EASTMAN, Respondent, v. ANITA PIPER, Appellant.

[1] LICENSES—DEFINITION.—A license is defined as a personal, revocable, and unassignable permission or authority to do one or more acts on the land of another without possessing any interest therein.

[2] ID.—NONASSIGNABILITY OF LICENSE.—A license, because it is personal, is incapable of being assigned by the licensee.

[3] EASEMENTS—INTEREST IN LAND—NATURE OF.—An easement, unlike a license, creates an interest in the land—an incorporeal interest. It is a liberty, privilege, or advantage, without profit, which the owner of one parcel of land may have in the lands of another.

[4] ID.—CREATION OF EASEMENT—LICENSES.—Though a license may be created by parol or by any act of the licensor sufficient to show his assent thereto, an easement can be created only by grant, or by implication or prescription, each of which presupposes a grant.

[5] ID.—CONSTRUCTION—EVIDENCE.—The determination of the extent and nature or rights created in express terms by an instrument in writing depends upon a proper construction of the language of the instrument. If the language is clear and explicit there is no room for the admission of parol evidence to show the extent of the rights acquired, but if the language is in any respect uncertain or ambiguous, then the court must read the instrument in the light of the situation of the property and the surrounding circumstances, to the end that the intention of the parties may be ascertained and given effect.

1. Revocability and assignability of licenses generally, note, 27 Am. Dec. 681. See, also, 16 Cal. Jur. 277, 282, 285; 17 R. C. L. 564.
Revocability of executed license on faith of which licensee has incurred expense, notes, 2 Ann. Cas. 787; 7 Ann. Cas. 706; 13 Ann. Cas. 843; Ann. Cas. 1913A, 74; Ann. Cas. 1914C, 920. See, also, 16 Cal. Jur. 286; 17 R. C. L. 578.

2. See 17 R. C. L. 575.

3. See 9 Cal. Jur. 943; 9 R. C. L. 735; 17 R. C. L. 566.

4. See 9 Cal. Jur. 948; 16 Cal. Jur. 278; 9 R. C. L. 745; 17 R. C. L. 572.

5. Parol evidence to add to or vary writing, note, 56 Am. St. Rep. 659. See, also, 10 Cal. Jur. 938; 10 R. C. L. 1016.

[6] ID.—DEEDS—CONSTRUCTION.—The rules applicable to the construction of deeds generally apply with full force and effect to instruments conveying easements or other similar rights or privileges.

[7] ID.—GRANT OF PRIVILEGE OF ROADWAY—CONSTRUCTION OF INSTRUMENT.—Where an owner of real property, by an instrument in writing, "grants the privilege" of a roadway along one of the boundaries of his land to another, "his heirs or assigns," the right or privilege created thereby was something more than a mere personal, revocable license—it was an easement.

[8] LICENSES—ASSIGNMENT—INHERITANCE.—A license being a mere personal privilege, is never extended to the heirs or assigns of the licensee. Any attempt by the licensee to assign the license ordinarily destroys and terminates it.

[9] EASEMENTS—USE OF WORDS "HEIRS OR ASSIGNS"—EFFECT OF.— The grant of the privilege of a roadway to the grantee, "his heirs or assigns," was an express recognition that the privilege was to be inheritable and assignable.

[10] ID.—PRIVILEGE NOT PERPETUAL—EFFECT OF.—The fact that a roadway privilege granted to another, his heirs or assigns, was not intended to be perpetual, was to endure only until a street should be extended past one of the sides of the land of the grantee, did not render the privilege granted less than an easement.

[11] ID.—TERM OF EASEMENT.—While it is true that ordinarily an easement is a right in fee, nevertheless the interest of an easement may be less than a freehold; it may be a chattel interest. That is, it may be an estate in fee, or less than fee, or even for a term of years.

[12] ID.—DURATION OF PRIVILEGE.—The fact that the duration of an easement in a roadway was made to depend upon such time as the extension of a street past the grantee's land was completed does not militate against the intention to create an easement evidenced by an instrument which "grants the privilege" of said roadway to the grantee, "his heirs or assigns."

[13] ID.—EASEMENT MAY BE BASE OR DETERMINABLE FEE.—An easement, like any other estate in land, may be a base or determinable fee.

[14] ID.— PRIVILEGE OF "TEMPORARY" ROADWAY — EFFECT OF WORD "TEMPORARY."—The word "temporary" in an instrument, by which the owner of real property "grants the privilege of a temporary roadway" to another, "his heirs or assigns, until such time as the extension of" a certain street is completed past the west side of a lot, does not necessitate the conclusion that the instrument was intended to create, not an easement, but a license.

---

6.  See 9 Cal. Jur. 243; 8 R. C. L. 1035.

9.  See 9 R. C. L. 752.

[15] ID.—CONTRACTS—GENERAL AND SPECIFIC PROVISIONS—CONSTRUCTION.—In determining whether such instrument creates an easement or a license, and the duration of the privilege thereby granted, the principle that when general and specific provisions of a contract deal with the same subject matter, the specific provisions, if inconsistent with the general provisions, are of controlling force, is applicable, and under this rule the specific event mentioned in said instrument—that the privilege granted should continue until the extension of a designated street is completed—should be given controlling force, rather than the elastic and indefinite word "temporary."

[16] CONTRACTS—INTENTION—CONSTRUCTION.—The rule that the intention of the parties is to be ascertained from the writing alone, where the contract is reduced to writing, is subject to other rules of law for the interpretation of contracts, one of which is that "a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

[17] ID.—REJECTION OF PARTICULAR PHRASE OR CLAUSE.—A contract should be read in the light of the general intent of the parties and the object sought to be attained by them, and if any particular phrase or clause be repugnant to or inconsistent with what appears to be such underlying purpose and main intention, as gathered from a consideration of all the provisions of the contract and the circumstances under which it was made, it should be rejected.

[18] EASEMENTS—NONASSIGNABILITY OF EASEMENTS IN GROSS.—Easements in gross are not assignable nor inheritable, and they cannot be made so by any terms in the grant.

[19] ID.—EASEMENT APPURTENANT OR IN GROSS—HOW DETERMINED.—Whether an easement in a given case is appurtenant or in gross is determined mainly by the nature of the right and the intention of the parties creating it.

[20] ID.—CHARACTER OF EASEMENT — PRESUMPTIONS. — As a general rule, an easement is never presumed to attach to the person of the grantee when it can fairly be construed to be appurtenant to some other estate. Whenever the right in question is in its nature an appropriate and useful adjunct of the land owned by the grantee of the easement, having in view his intention as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant and not in gross.

---

15. See 6 Cal. Jur. 282.
16. See 6 Cal. Jur. 256, 294, 330; 6 R. C. L. 835, 849.
17. See 6 Cal. Jur. 280, 282; 6 R. C. L. 847.
18. See 9 Cal. Jur. 945; 9 R. C. L. 739.
19. See 9 Cal. Jur. 946; 9 R. C. L. 738.
20. See 9 Cal. Jur. 946.

[21] ID. — EASEMENT CREATED BY INSTRUMENT — CHARACTER OF. — An easement created by an instrument granting the privilege of a temporary roadway to another, his heirs or assigns, until such time as the extension of a certain street is completed past the west side of a lot, is appurtenant to the land of the grantee, there being nothing to indicate that such grantee had any occasion to use the roadway other than as a means of passing to and from his land.

[22] ID.—USE OF WORDS "HEIRS OR ASSIGNS"—EFFECT OF.—The words "heirs or assigns" necessarily create an easement appurtenant, since words of such import are inconsistent with the peculiar personal character of an easement in gross, which can neither be alienated nor passed by inheritance.

[23] ID.—DESCRIPTION OF DOMINANT TENEMENT.—It is not essential to the grant of an easement appurtenant that the dominant tenement, in addition to being described in the grant, should also be described as the dominant tenement.

[24] ID. — CONSIDERATION — VOLUNTARY TRANSFER. — Where an instrument granting an easement appurtenant was executed voluntarily by the grantor, and as a transfer *in praesenti* the grant of the easement was an executed contract, no consideration was necessary to its validity.

[25] ID.—QUIETING TITLE—INJUNCTION — FINDINGS. — In an action to quiet title to an easement in a roadway and to restrain the defendant from interfering with plaintiff's use thereof, the defendant cannot rightfully complain of the failure of the trial court to find upon an issue, where such issue was so completely irreconcilable with another upon which the court found in favor of plaintiff that the finding upon the latter issue is tantamount to a finding adverse to defendant upon the issue as to which it is claimed no finding was made.

[26] ID.—FINDINGS.—A failure to find upon an issue is not ground for reversal when no substantial right of the appellant is prejudiced thereby.

[27] ID.—FINDINGS—EVIDENCE.—In an action to quiet title to an easement in a roadway which was to endure, according to the terms of the grant, until such time as the extension of a street past the plaintiff's property was completed, and to restrain the defendant from interfering with plaintiff's use of said roadway, a finding that such street never was extended past plaintiff's property was justified where the case was tried upon the theory that said street

---

23.   See 9 R. C. L. 738.

24.   See 6 Cal. Jur. 167.

26.   See 2 Cal. Jur. 1032.

had not been so extended, and plaintiff, when asked by what means he could get in and out of his premises if he were deprived of the use of said roadway, answered, "Nothing but an aeroplane."

(1) 37 **C. J.**, p. 279, sec. 173.   (2) 37 **C. J.**, p. 287, sec. 188. (3) 19 **C. J.**, pp. 862, 863, sec. 1.   (4) 19 **C. J.**, p. 873, sec. 16; 37 **C. J.**, p. 282, sec. 175.   (5) 19 **C. J.**, p. 908, sec. 94.   (6) 19 **C. J.**, p. 908, sec. 94.   (7) 37 **C. J.**, p. 281, sec. 174.   (8) 37 **C. J.**, p. 280, sec. 173, p. 287, sec. 188, pp. 288, 289, sec. 190.   (9) 19 **C. J.**, p. 872, sec. 13.   (10) 19 **C. J.**, p. 863, sec. 1.   (11) 19 **C. J.**, p. 863, sec. 1.   (12) 37 **C. J.**, p. 281, sec. 174.   (13) 19 **C. J.**, p. 863, sec. 1. (14) 19 **C. J.**, p. 872, sec. 13.   (15) 13 **C. J.**, p. 536, sec. 497 (Anno.).   (16) 13 **C. J.**, p. 543, sec. 514, p. 908, sec. 94.   (17) 13 **C. J.**, p. 521, sec. 482, p. 536, sec. 497.   (18) 19 **C. J.**, p. 867, sec. 5. (19) 19 **C. J.**, p. 868, sec. 5.   (20) 19 **C. J.**, p. 868, sec. 5.   (21) 19 **C. J.**, p. 865, sec. 4.   (22) 19 **C. J.**, p. 868, sec. 5.   (23) 19 **C. J.**, p. 906, sec. 91 (Anno.).   (24) 19 **C. J.**, p. 906, sec. 91 (Anno.). (25) 38 **Cyc.**, p. 1984.

APPEAL from a judgment of the Superior Court of Los Angeles County. William C. Doran, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. H. Scharnikow and Arthur Wm. Green for Appellant.

Rush M. Blodget and E. B. Evans for Respondent.

FINLAYSON, P. J.—This is an action to quiet plaintiff's title to an easement in a roadway over defendant's land and to restrain the defendant from interfering with plaintiff's use thereof. Judgment was entered in favor of plaintiff and defendant appeals.

The findings of fact indicate the issues presented for determination. The substance thereof is as follows: Plaintiff is the owner of the west half of lot G in block 12 of the Monrovia tract in the city of Monrovia. The easterly half of the lot, i. e., the easterly three hundred feet, is bounded on its easterly side by Magnolia Street. No other portion of the lot touches any public street or highway. Some time prior to November 8, 1917, one Samuel F. Moffit, who then was the owner of all of the lot, conveyed the easterly three hundred feet to one Harriette S. Belden, who, on the date last mentioned, conveyed that part of the lot to defendant. Prior to the convey-

ance to Belden a roadway ten feet in width along the southerly end of the easterly three hundred feet had been used by Moffit as a means of ingress and egress to and from the westerly half of the lot, the roadway connecting Moffit's half of the lot with Magnolia Street. At the time when the easterly half of the lot was conveyed by Belden to defendant the latter executed to Moffit an instrument in writing as follows:

"Monrovia, Cal., Nov. 8, 1917.

"The undersigned, owner of the within described property, hereby grants the privilege of a temporary roadway 10 feet wide along the south boundary of the east ½ of lot G, block 12, Monrovia tract, in the city of Monrovia, Los Angeles county, to Samuel F. Moffit, his heirs or assigns, until such time as the extension of Alta Vista St. is completed past the west ½ of said lot G, block 12, Monrovia Tract.

"ANITA PIPER, Owner."

The roadway privilege thus granted by defendant to Moffit, his heirs or assigns, was a roadway privilege in the same ten-foot strip which previously had been used by Moffit as a means of ingress and egress to and from his westerly three hundred feet. The principal questions presented for our determination revolve about the instrument so executed by defendant to Moffit.

Subsequently to the execution of Mrs. Belden's deed to defendant Moffit conveyed the westerly half of the lot to one H. J. Caldwell, under whom plaintiff deraigns his title by mesne conveyances.

The extension of Alta Vista Street has never been completed past the west half of lot G. At all times subsequent to defendant's execution of the instrument above set forth the ten-foot roadway referred to therein has been used by plaintiff and his predecessors in interest as a public highway to and from the westerly half of the lot, it being their only means of ingress and egress. Defendant now threatens to put a fence across the roadway to prevent plaintiff from using it.

The principal grounds of appeal are: (1) That the instrument whereby defendant granted the privilege of a roadway to Moffit and to his heirs or assigns created only a revocable license and not an easement; and (2) that if

an easement and not a license was created by that document, it was an easement in gross and therefore was not assignable to plaintiff and did not pass upon the transfer to him of the west half of the lot.

The distinction between a license and an easement is often subtle and difficult to discern. **[1]** The former is defined as a personal, revocable, and unassignable permission or authority to do one or more acts on the land of another without possessing any interest therein. "It is a distinguishing characteristic of a license that it gives no interest in the land and that it may rest in parol. It is clear, of course, that this must necessarily be so, for if by a license an interest in the land could be created within the meaning of the statute of frauds, under that statute it could not be created by parol, and if created by grant and an interest in the land thereby passes, the distinctive feature of the transaction as a license vanishes at once. And so the fact that a valid license to enter on land may be given by parol rests on the distinction that a license is only an authority to do an act or series of acts on the land of another, and passes no estate or interest therein." (17 R. C. L., pp. 564, 565, tit. "Licenses," par. 78.) **[2]** A license, because it is personal, is incapable of being assigned by the licensee. "Being a mere personal privilege it is never extended to the heirs or assigns of the licensee, and ordinarily, as to the licensee himself, a parol license is regarded as destroyed by an attempt to assign it." (Id., p. 575, par. 88.) "The one essential of a license is that it be assented to by the licensor; and any acts may serve to show such assent. For example, consent to the creation of a license privilege may be evidenced by acquiescence in its exercise. . . . " (Id., p. 572, par. 85.)

**[3]** An easement, unlike a license, creates an interest in the land—an incorporeal interest. It is a liberty, privilege or advantage, without profit, which the owner of one parcel of land may have in the lands of another. (19 C. J., p. 862, tit. "Easements," par. 1.) "While the distinction between an easement . . . and a license is sometimes difficult of discernment, in theory, at least, the distinction is clear, for an easement creates an interest in the land." (17 R. C. L., pp. 566, 567, tit. "Licenses," par. 80.) **[4]** Though a license

may be created by parol or by any act of the licensor sufficient to show his assent thereto, an easement can be created only by grant, or by implication or prescription, each of which presupposes a grant. This is necessarily so, because, under a well-established principle, an interest in or arising out of land lies in grant only.   (9 R. C. L., p. 745, tit. ''Easements,'' par. 14.)

[5]   The determination of the extent and nature of rights created in express terms by an instrument in writing depends upon a proper construction of the language of the instrument. If the language is clear and explicit there is no room for the admission of parol evidence to show the extent of the rights acquired. But if the language is in any respect uncertain or ambiguous, then the court must read the instrument in the light of the situation of the property and the surrounding circumstances, to the end that the intention of the parties may be ascertained and given effect. [6]   In short, the rules applicable to the construction of deeds generally apply with full force and effect to instruments conveying easements or other similar rights or privileges.   (19 C. J., pp. 907, 908, tit. ''Easements,'' par. 94.)

[7]   Applying these principles as aids to the construction of the instrument in question, we conclude that the right or privilege created thereby was something more than a mere personal, revocable license—that it was, in short, an easement. The right which it passed to Moffit, his heirs or assigns, was a right created by grant. The instrument expressly ''grants'' to Moffit, his heirs or assigns, the privilege of a roadway. And though a license may be created by deed, where the intention to create no more than a personal, revocable permission is clearly manifest, the fact that the instrument here under consideration expressly ''grants'' the privilege of a roadway is of some significance in determining the nature of that privilege. See *Walterman* v. *Norwalk,* 145 Wis. 663 [Ann. Cas. 1912A, 1176, 130 N. W. 479], where the court says: '' . . . the use in the instrument of the word 'remise, release and forever discharge,' etc., indicates pretty clearly an intention to give something more than a mere license; to grant an easement in the land.''   Another suggestive feature of the instrument, and one which we deem especially pregnant with significance, is that it grants the

68 Cal. App.—36

roadway privilege to Moffit and to "his heirs or assigns."
[8] As we have pointed out, a license, being a mere per-
sonal privilege, is never extended to the heirs or assigns of
the licensee. Indeed, any attempt by the licensee to assign
the license ordinarily destroys and terminates it. (*Bates* v.
*Duncan,* 64 Ark. 339 [62 Am. St. Rep. 190, 42 S. W. 410];
*United States Coal etc. Co.* v. *Harrison,* 71 W. Va. 217 [47
L. R. A. (N. S.) 870, 76 S. E. 346].) [9] The grant of the
privilege of a roadway to Moffit, "his heirs or assigns," was
an express recognition that the privilege was to be inherit-
able and assignable. But as the qualities of inheritability and
assignability are inconsistent with a license, we must con-
clude that something more than a license was intended to
be granted; that it was intended to create an inheritable
interest in a servient estate—in short, an easement.

[10] Concluding, as we do, that because the instrument
"grants" the roadway privilege to Moffit and to "his heirs
or assigns" an easement was thereby created, it only remains
to consider whether the points urged by appellant in oppo-
sition to this theory necessitate a different conclusion. It
is first suggested that because the roadway privilege granted
to Moffit, his heirs or assigns, was not intended to be per-
petual but was to endure only until Alta Vista Street should
be extended past the west half of block G, the grant cannot
attain to the dignity of an easement, but necessarily must be
a mere license. We do not find in this point any insuper-
able barrier to our conclusion that the instrument created
an easement and not a mere license. [11] While it is true
that ordinarily an easement is a right in fee, it is not neces-
sarily so. The interest of an easement may be less than a
freehold; it may be a chattel interest. That is, it may be
an estate in fee, or less than fee, or even for a term of
years. (*Goldman* v. *Beach Front etc. Co.,* 83 N. J. L. 97
[83 Atl. 777]; 19 C. J., p. 862, tit. "Easements," par 1.)

[12] Again, it is suggested that the right or privilege
granted to Moffit, his heirs or assigns, cannot amount to an
easement for the reason that it is a right or privilege of
indefinite duration, i. e., it is to continue until Alta Vista
Street shall be extended past the west half of lot G—an un-
certain event which may or may not happen, and if it does
happen it may occur in either the near or the remote future.

We fail to see how this aspect of the question is necessarily subversive of our conclusion that the instrument evidences an intention to create an easement. The argument is tantamount to a claim that the interest of an easement may not be a base, qualified or determinable fee, i. e., an estate which may last forever but which may end on the happening of a merely possible event. (*Des Moines City R. Co.* v. *Des Moines,* 183 Iowa, 1261 [L. R. A. 1918D, 839, 159 N. W. 450, 165 N. W. 398]; 21 C. J., p. 922, tit. "Estates," par. 18.) [13] It is well established that an easement, like any other estate in land, may be such base or determinable fee. (*Hall* v. *Turner,* 110 N. C. 292 [14 S. E. 791].)

[14] As her final point in support of her contention that the roadway privilege granted to Moffit, his heirs or assigns, did not amount to an easement, appellant contends that the use of the word "temporary" in the instrument is inconsistent with an intent to create an easement. It is claimed that if the privilege granted to Moffit, his heirs or assigns amounted to an easement then it is possible that it might continue forever, since the extension of Alta Vista Street— a matter lying beyond the control of the owner of either tenement—might never take place; and it is argued that such a perpetual easement would be inconsistent with that part of the instrument which declares that the privilege granted is "the privilege of a *temporary* roadway." Wherefore it is claimed that in order to give some effect to this word "temporary" it must be held that the roadway privilege was not intended to be one in the nature of an easement, or an incorporeal interest in defendant's land, but was intended to be a license only. In this contention appellant presents her case in its strongest light. For it must be conceded that even if the parties to this instrument used the word "temporary" in its largest sense, i. e., as any duration of time short of permanency, still there would be an apparent antithesis between that part of the instrument which says that the privilege granted thereby is "the privilege of a *temporary* roadway" and the clause which states, unequivocally, that the roadway privilege which is granted to Moffit, his heirs or assigns is granted "until such time as the extension of Alta Vista St. is completed"—an event which may never happen. But this notwithstanding, we are unable to

see how the word "temporary" necessitates the conclusion that the instrument was intended to create, not an easement, but a license—a mere personal privilege which is revocable at any time, even at the very moment of its creation, and which is wholly dependent upon the capricious whim of the licensor. The word "temporary" is a word of much elasticity and considerable indefiniteness; whereas the phrase "until such time as the extension of Alta Vista St. is completed" refers to something concrete and definite. True, it is an event which possibly may never take place. Nevertheless, the reference is to a particular event—a particular, possible event. We must choose between a license and an easement. There is no possible alternative; there is no middle ground. That is, we must choose, *nolens volens*, between a mere permissive authority to pass over the roadway—a personal, permissive authority which is revocable at the pleasure of the licensor and which is subject to instant demise by being put an end to at the very moment of its birth— and a privilege in the nature of an easement—a privilege which can last "until such time as the extension of Alta Vista St. is completed."

The question presented by the apparent conflict between the word "temporary" and the particular event referred to in the concluding part of the instrument as the event which is to measure the duration of the roadway privilege resolves itself, in the final analysis, into this: Shall the nature of the privilege granted by this instrument be determined solely by a consideration of the weight to be given to the word "temporary"? If, in interpreting this instrument, the word "temporary" is to control in the matter contended for by appellant, i. e., if it is to have the effect of limiting the roadway privilege to a mere license, then the obvious intention of the parties that the privilege granted to Moffit, his heirs or assigns shall continue until Alta Vista Street is extended past respondent's property may be entirely frustrated. The privilege granted by appellant, whatever its nature may be, is so unmistakably tied to the one definite event pointed to by the instrument that we think it clear that that specific event should be given controlling force, and not the elastic and indefinite word "temporary," if either one alone is to control in the interpretation of the instrument. **[15]** It is

said in *Scudder* v. *Perce,* 159 Cal. 433 [114 Pac. 573], that "when general and specific provisions of a contract deal with the same subject matter, the specific provisions, if inconsistent with the general provisions, are of controlling force." That principle, we think, is applicable here.

There are other rules of interpretation which, in our opinion, give determinative force to the position that paramount force is to be given to the clause which declares that the roadway privilege shall continue until Alta Vista Street is extended. A grant is to be interpreted in the same manner as any other contract (Civ. Code, sec. 1066), so as to give effect to the intention of the parties if that intention can be ascertained (sec. 1636). For the purpose of ascertaining that intention "the whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" (sec. 1641); or, as it is sometimes said, the intention is to be gathered from the four corners of the instrument. [16] But the rule that the intention of the parties is to be ascertained from the writing alone, where the contract is reduced to writing, is subject to other rules of law for the interpretation of contracts. One of these is that "a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." (Sec. 1647.) [17] Another rule is that the contract should be read in the light of the general intent of the parties and the object sought to be attained by them, and if any particular phrase or clause be repugnant to or inconsistent with what appears to be such underlying purpose and main intention, as gathered from a consideration of all the provisions of the contract and the circumstances under which it was made, it should be rejected. This rule is stated by the code thus: "Particular clauses of a contract are subordinate to its general intent." (Civ. Code, sec. 1650.) Again: "Words in a contract which are wholly inconsistent with . . . the main intention of the parties, are to be rejected." (Sec. 1653.) From the language of the instrument in question and the circumstances under which it was executed we think it clear that the underlying purpose of the parties and their main intention was to afford to Moffit and to his heirs or assigns a means of ingress and egress to and from the west half of

lot G, through the medium of the ten-foot strip then in use for that purpose, until such time as he or they could avail themselves of a public roadway for such ingress and egress, i. e., until such time as Alta Vista Street, as a public thoroughfare, should be extended past the west half of the lot to Magnolia Street. If, therefore, Alta Vista Street, through no fault of the owners of the west half of the lot, never shall be extended, and if a condition is thus brought about which may give rise to a seeming inconsistency between the word "temporary" and the underlying purpose of the parties as evidenced by the use of the words "until such time as the extension of Alta Vista St. shall be completed," that underlying purpose must prevail even though the word "temporary" may thereby be bereft of all force.

The parties doubtless did believe that Alta Vista Street would some day be extended past the west half of lot G, and that, therefore, the privilege that was being extended to Moffit and to his heirs or assigns would prove to be not permanent but temporary, i. e., lasting for a time only. But granting that it was the expectation of the parties at the time when the instrument was executed that Alta Vista Street would some day be extended past the westerly half of the lot to Magnolia Street, nevertheless the intention that the privilege of the roadway should continue until such time as Alta Vista Street should be so extended is so plainly manifested upon the face of the instrument itself that such intention must control, even though it may involve the possibility of disappointing the grantor's expectation that the privilege granted by her would prove to be but temporary.

Though we have devoted much space to a consideration of the clause which grants the roadway privilege "until such time as the extension of Alta Vista St. shall be completed," it must not be supposed that we are relying upon it to uphold our conclusion that an easement was created. We are simply replying to appellant's argument that the use of the word "temporary" necessarily imports a license and not an easement.

To support her contention that the privilege granted by this instrument was a license and not an easement appellant places much reliance on the case of *Davis* v. *Tway,* 16 Ariz.

566 [L. R. A. 1915E, 604, 147 Pac. 750]. That case is not in point. It did not present the question whether the privilege there under consideration was a license or an easement. The privilege which arose out of the facts of that case rested in parol and it seems to have been conceded that it was a license only. At any rate, it was not contended that it was anything other than a license. Indeed, it could not have been claimed to be anything else; for had the beneficiary of the parol understanding urged that an easement was granted to him he would have been met with the unanswerable objection that, under the statute of frauds, an easement—an interest in land—cannot be created by parol. The gist of the decision in that case is that the doctrine of equitable estoppel is not applicable to a temporary license. That is, it was held that a parol license is not made irrevocable by improvements and expenditures made thereunder by the licensee unless the license, as given by the licensor, be a permanent one. The meat of the decision is in the concluding sentence of the court's opinion: "Before decreeing a licensee an interest in the realty of the licensor on the ground of estoppel, upon a verbal license, in derogation of the statute of frauds, the evidence should be clear and convincing that it was the intention of the owner of the servient estate to grant a permanent right of way, and that the licensee had a right to proceed in the making of his improvements upon that theory."

The next question argued by appellant is that the easement was not appurtenant but was in gross—that the roadway privilege was not appurtenant to the property then owned by Moffit and now owned by respondent, but was personal to Moffit. [18] The question is important, for if the easement was appurtenant it passed to respondent as an incident to the land conveyed to him (Civ. Code, sec. 1104); whereas if it was personal to Moffit it ceased to exist when the latter deeded the property to Caldwell—for easements in gross (strictly speaking they are not easements) are not assignable nor inheritable, and they cannot be made so by any terms in the grant. (9 R. C. L., p. 739, tit. "Easements," par. 6.)

We think the easement was appurtenant, and that it attached to and belongs to respondent's land for the enjoy-

ment thereof. [19] Whether an easement in a given case is appurtenant or in gross is determined mainly by the nature of the right and the intention of the parties creating it. [20] It may be said to be a general rule that an easement is never presumed to attach to the person of the grantee when it can fairly be construed to be appurtenant to some other estate. Whenever the right in question is in its nature an appropriate and useful adjunct of the land owned by the grantee of the easement, having in view his intention as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant and not in gross. (9 Cal. Jur., p. 946, tit. "Easements," par. 3.) [21] There is nothing to indicate that Moffit had any occasion to use the roadway other than as a means of passing to and from that part of lot G which was retained by him. The inference would seem to be inevitable, therefore, that it was for that use that both appellant and Moffit understood and intended the roadway privilege to be granted. (See *Goldstein* v. *Raskin*, 271 Ill. 249 [111 N. E. 91].) Moreover, to hold that the easement is in gross would be to nullify the effect of the words of inheritance and assignability contained in the grant. [22] The words "heirs or assigns" necessarily create an easement appurtenant, since words of such import are inconsistent with the peculiar personal character of an easement in gross, which can neither be alienated nor passed by inheritance. (See *Hopper* v. *Barnes*, 113 Cal. 636 [45 Pac. 874]. Also *Nilson* v. *Wahlstrom*, 40 Cal. App. 237 [180 Pac. 358], and *Parsons* v. *New York etc. R. Co.*, 216 Mass. 269 [103 N. E. 693].)

[23] It is insisted that it is essential to the grant of an easement appurtenant that the dominant tenement shall not only be described in the grant but that it shall be described *as the dominant tenement*. In this case the land for the enjoyment of which the easement was created, the west half of lot G, is described in the instrument, but it is not expressly described as or declared to be the dominant tenement, or land for the benefit of which the roadway privilege was created. To sustain her contention appellant cites *Wagner* v. *Hanna*, 38 Cal. 111 [99 Am. Dec. 354]—a decision by a divided court. But that case, in so far as it announces the principle here invoked by appellant, has been overruled,

in effect, by later decisions of the supreme court, particularly by the decision in *Hopper* v. *Barnes, supra.* For a review of these later decisions and their effect upon *Wagner* v. *Hanna, supra,* see *Nay* v. *Bernard,* 40 Cal. App. 364 [180 Pac. 827]. It is said in Ruling Case Law that "the reasonable and prevailing rule is that an easement is appurtenant if so in fact, although not declared to be so in the deed, and that if the intention is not sufficiently expressed this question may be determined by the relation of the easement to the so-called dominant estate, or the absence of it, and in the light of all the circumstances under which the grant was made." (9 R. C. L., p. 738, tit. "Easements," par. 5.)

[24] The instrument granting the easement was executed by appellant voluntarily. The court so finds, in substance and effect, and the evidence fully justifies the finding. As a transfer *in praesenti* the grant of the easement was an executed contract. No consideration, therefore, was necessary to its validity. (Civ. Code, sec. 1040; *Lieman* v. *Golly,* 178 Cal. 544 [174 Pac. 33].)

Appellant complains because the court did not find upon certain issues. [25] One of the issues upon which it is claimed the court failed to find is so completely irreconcilable with another upon which the court found in favor of respondent that the finding upon the latter issue is tantamount to a finding adverse to appellant upon the issue as to which it is claimed no finding was made. The other issues upon which it is claimed the court failed to find either presented conclusions of law or were of such a character that had findings thereon in favor of appellant been made a different judgment would not have been required. [26] Appellant's objection falls within the well-established rule that a failure to find upon an issue is not ground for reversal when no substantial right of the appellant is prejudiced thereby.

[27] It is urged that there is no evidence to support the finding that Alta Vista Street has never been extended past respondent's property. Not only was the case tried upon the theory that Alta Vista Street had not been so extended, but plaintiff, when asked by what means he could get in and out of his premises if he were deprived of the use of the

ten-foot strip in question, answered, "Nothing but an aeroplane." This answer carried the necessary implication that at the date of the trial Alta Vista Street had not been extended past the west half of lot G.

Of the remaining points raised by appellant it is sufficient to say that they either are disposed of by what we already have said in our discussion of appellant's principal contentions, or they lack sufficient merit to require further consideration. We find no prejudicial error in the record.

The judgment is affirmed.

Craig, J., concurred.

WORKS, J., Dissenting.—I dissent. I cannot adopt the construction placed upon the instrument which is set forth in the early part of the majority opinion. To me it appears to create a mere license. As a background upon which to consider specific parts of the paper, it is to be observed that in phraseology and structure it is of the most informal character. It has none of the technical marks of a formal grant, but appears as a mere letter from one person to another. It evidently was not drawn by one accustomed to the terminology of conveyancing, and the language employed in it is therefore not necessarily to be given a technical meaning.

Viewing from this standpoint the letter which one of the parties handed to the other, the construction which by the majority opinion is placed upon the word "grant" is to my mind unwarranted. In my opinion, fitting the word to the context of the instrument and viewing it as part of a paper loosely drawn by a layman, it imports no more than the word "allow," the phrase in which it is employed then in effect reading "hereby allow the privilege."

In my opinion the phrase "his heirs or assigns" need not be given the force ascribed to it in the majority opinion. It is quite proper to assume that the writer and the addressee of the letter had no knowledge of the technical meaning of that collocation of words when employed in such a paper as the one before us, and, considering the instrument as a whole, it seems to me that the words mentioned may be disregarded as surplusage, this upon the assumption that they are in strictness to be taken as meaning what my associates

assert that they mean. But is that meaning necessarily, or is it even properly, to be attributed to them? Authorities are cited to the effect that a license is not assignable and that an attempt to assign one operates as a termination of it. I doubt if these cases can be taken to import that one may not *expressly* create a license in such manner that it may pass to successive persons. Suppose that the privilege here in question had its origin in parol. Suppose that at the moment of its creation Anita Piper knew that Moffit expected soon to make conveyance of his property to A, and suppose that the then existent fact was that Moffit was in ill health. Suppose, further, that at the moment of its creation there were present Anita Piper, Moffit, A, and Moffit's sole heir, B. Suppose that, in creating the right, Anita Piper had said, ''Moffit, you may have the right temporarily to pass over a ten-foot strip of my land,'' describing it, ''and as I know that you intend soon to convey your land to A and that you are in ill health and may not survive until the conveyance is made, the privilege which I now allow you may be exercised by either A or B, as owners after you of the land you now possess, until I shall see fit to revoke it.'' Taking the letter now present as a whole, is it not just to assume that Anita Piper, using the words ''heirs or assigns'' without a knowledge of the refined legal distinctions between licenses and easements, intended exactly what we have supposed her to say in her imagined oral statement? In construing the paper before us we endeavor to ascertain the intention of the writer and the addressee, of course. In endeavoring to fathom the meaning of the phrase ''heirs or assigns'' it must distinctly be borne in mind that we are not concerned with the question whether a license can actually be created so as to be enjoyed by successive persons, but whether the writer and addressee of the letter *attempted* so to create one. If that was their *intention,* the thing not being legally possible, the words ''heirs or assigns'' would be pure surplusage for that reason and either a license would be created in Moffit alone, or the instrument would be wholly ineffective. My view is that the employment of the words, considering the instrument as a whole and endeavoring to harmonize its various parts, is far from making it necessary to determine that the paper does not create a mere license.

I am of the opinion that the reasoning of my associates upon the clause "until such time as the extension of Alta Vista St. is completed" is not justified. The event thus specified was beyond the control of the parties and may never happen, even in the estimation of any person. Not only so, but the language employed is so uncertain that it cannot even be asserted in the future by any person with certainty that it has happened. When can it be said that the "extension" is "completed"? If the strip of land over which the street may be expected to be laid out is condemned under the right of eminent domain, will the extension be completed without the removal of fences or other artificial barriers which may forbid its use? If it be condemned and artificial barriers be removed, but the natural surface of the ground is such, because of ditches or ravines, that the strip condemned is impassable, will the extension then be completed? It may be responded to these questions that an extension of the street contemplates the opening of a passable thoroughfare, for the reason that the temporary roadway provided for in the instrument before the court was allowed by Anita Piper across her land for the purpose of affording a practical means of egress from the westerly half of the lot. I am not satisfied that this answer disposes of the questions, but if it be granted that it does, we are not yet freed from difficulty. Suppose that, irrespective of the character of the ground and of the presence of artificial obstructions, a strip but ten feet wide be condemned as an extension of the street; will the clause then be satisfied? How wide is Alta Vista Street where it now exists? Nor is the expression "past the west ½ of said lot G" free from doubt. Suppose a condemnation of a strip of whatever width, suppose a removal of barriers, both natural and artificial, "past" the front of lot G and to the farthest side line of the lot or a few feet beyond, but not to an intersecting road or street, will the extension then be completed? It is to be observed, in clarifying this question, that if the street is expected to be extended toward the east, a feature of the situation as to which we are not informed, and it be thus extended to but a foot "past" the east line of the west half of lot G, it will form a cul-de-sac, with its terminus 299 feet short of Magnolia Avenue, for the roadway along the south-

erly side of Anita Piper's property is 300 feet long. Such a completion of the extension will not enable the owners of the west half of lot G to reach Magnolia Avenue over Alta Vista Street, a thing which they may now do over the temporary roadway, but it will satisfy the letter of the call for an extension "past" the west half of the lot. Not only do these questions and remarks indicate the informal character of the letter now present for the purposes of construction, but they tend to show that the portions of it to which the queries relate are meaningless. Nevertheless, my associates see in the part of the paper in question a strong circumstance upon which to meet appellant's argument as to the effect of the word "temporary." The avowed and indubitable result of this view is, of course, that if the extension is never completed, construing the clause as any person whatever may construe it, the easement granted subsists forever, or at least until it is destroyed by grant. Verily, Anita Piper is thus put under too heavy punishment for failing to employ counsel properly to express her intention toward Moffit, his heirs and assigns. In my opinion the only satisfactory view to be taken of the portions of the paper now under scrutiny is that Anita Piper is to determine not only how long the completion of the extension of Alta Vista Street is to be awaited, but when the extension has been made, and in either event to terminate the privilege allowed by her letter. Of course, if she can terminate it then she can do so at any time, and it is but a license.

I have reserved for final treatment the fact that the word "temporary" occurs in the writing. If the views above expressed are justified upon a consideration of the informal context of the instrument as a whole, with which theory I commenced, they are positively required by the employment in it of the word temporary, and with this theory I close. Whatever judicial acumen may discover in other members of the writing, it was drawn by lay people, and their assertion that the privilege allowed by the paper was to be temporary is the one outstanding special feature of it. They had no knowledge of the technical meaning of the word "grant"; they had no understanding of the technical bearing which might be discovered in the words "heirs or assigns," when used in a paper designed, as it appears to me this one was

designed, to allow a fleeting privilege to pass along a strip of real property, but they did know the meaning of the word "temporary." `Notwithstanding these facts, the majority opinion in effect expunges the latter word from the instrument. I cannot agree with my associates in the assertion that the word is elastic and indefinite. Certainly, it is the direct opposite of the word "permanent," which has by the majority opinion been inserted in its place. The factor of the paper which was to the parties undoubtedly the most important has now vanished into thin air. There is in my opinion no warrant for this feat of judicial legerdemain. All factors in the writing which might by close reasoning upon legal principles be discovered to convey any idea that the privilege was not to be evanescent should be so resolved, if possible, as to make them bend to the word "temporary." That they can be so resolved it has been the purpose of this dissent to show. The instrument before us, drawn by a lay hand, should receive, if possible, a lay construction. It is only upon such a construction that we may place ourselves in the position of the parties to the paper, and before we can determine what they meant we must sit where they sat and see what they saw. Even with the aid of the able opinion which is before me, I cannot bring myself to the view that Anita Piper intended to create or that Moffit understood that she was creating a right which might place the use of part of her property beyond her control forever.

The judgment should be reversed.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 3, 1924.

All the Justices concurred.