BLACK HILLS POWER & LIGHT CO., Respondent v. SCHUFT et al., Appellants

(193 N.W. 2d 429)

(File No. 10821. Opinion filed January 6, 1972)

**Hanley, Wallahan, Driscoll & Murray, H. R. Hanley,** Rapid City, **David E. Morrill,** Sturgis, for plaintiff and respondent.

**Stephens & Brandenburg, R. E. Brandenburg,** Belle Fourche, for defendants and appellants.

JONES, Circuit Judge.

The plaintiff herein seeks a declaratory judgment pursuant to SDCL 21-24 to determine the rights and obligations of the parties hereto.

The factual background of the case is as follows. Commencing in the spring of 1878 and continuing until 1903, one David M. Dorsett farmed in Lawrence and Butte Counties, and irrigated his

farm with water from the Redwater River which forms the boundary between Lawrence and Butte Counties and meanders through the Dorsett farm. The defendants herein now own the Dorsett farm. Dorsett and his neighbors to the west had a small irrigation canal which took water from a dam on the Redwater River and conveyed it to their farms in such a manner as to permit them to irrigate their farms by gravity flow. The dam which diverted water to this canal washed out in 1903, and it had not yet been rebuilt in 1905. Thus, in 1905 Dorsett had by prior appropriation a consumptive water right to use for irrigation 125 miner's inches of water (50 miner's inches of water equals one cubic foot per second) but no means to get the water into his irrigation ditches.

In May 1905, Dorsett was approached by Richard B. Hughes and Milton L. Brenn, representatives of the Black Hills Traction Company. This company proposed to construct an electric trolley line from the Redwater River through Spearfish and on to Deadwood. The trolley line was to be powered by a hydroelectric plant on the Redwater River about one mile downstream from the Dorsett farm. In order to get a sufficient head of water to operate the hydroelectric plant it was necessary for the company to divert the Redwater River about seven and one-half miles upstream and transport it to the plant by means of a canal and pipeline. The company needed a strip of land from Dorsett for this canal.

On May 29, 1905, Dorsett conveyed to the Black Hills Traction Company a 100-foot strip of land across his farm, totaling approximately six and four-tenths acres. The deed recited a consideration of one dollar and contained the following clause which was endorsed on the back of the deed prior to its execution:

> "As a further and necessary consideration for the execution of this deed the Black Hills Traction Company, party of the second part, agrees and binds itself or assigns in case of failure to complete its trolley line to the Redwater river within three years from date of this instrument to reconvey the premises herein described to the party of the first part, or in case of completion of the canal for which the right of way is granted and failure

to build the trolley line the said party of the second part shall furnish to the said party of the first part One Hundred and Twenty-five Miner's inches of water from said canal free of cost to said first party."

The parties hereto disagree on the meaning and effect of the foregoing clause, and the problem in this case is one of determining the rights and obligations of the parties under this deed. The plaintiff herein is the successor company to the Black Hills Traction Company.

The trolley line was never built, but the canal was built in 1906 and 1907 and the hydroelectric plant was put in operation. However, thereafter, the traction company refused to let Dorsett take water from their canal and a lawsuit resulted. It reached this court in 1912. Dorsett v. Black Hills Traction Company, 30 S.D. 420, 138 N.W. 808.

From 1912 to 1966 water flowed through the canal to the hydroelectric plant, Dorsett and his successors in interest took 125 miner's inches of water therefrom, and the relations between the parties were harmonious.

In 1966 a major break-down occurred at the hydroelectric plant which by this time had become economically unfeasible to operate. Rather than make repairs to the plant and canal estimated at $180,000, the plant was dismantled and abandoned, and the plaintiff no longer maintained its canal. In July of 1967 a big flume above defendants' farm washed out and the canal has not been operable since that time.

The canal when built had a bottom 12 feet wide and was capable of handling in excess of 5,000 miner's inches of water, or 100 cubic feet of water per second.

■ We believe the general rule in cases of this nature to be that a grant of a right to take water from a canal imposes no duty on the grantor to either maintain the canal or to provide an alternate method of transporting the water, in the absence of an

express or implied agreement to that effect. The Supreme Court of California long ago in Bryan v. Idaho Quartz Min. Co., 73 Cal. 249, 14 P. 859, held that a deed which granted to a mining company a right-of-way across the grantor's land for a flume to its quartz mine and for a reservoir and waste water ditch, but reserved to the grantor the right to use so much of the waste water from the reservoir as he shall choose, did not imply a covenant that there shall be any waste water. It is also stated in Farnham, The Law of Waters and Water Rights, Vol. III, § 774, that a mere grant of a right to take water from a dam imposes no duty upon the grantor to maintain the dam. See also 93 C.J.S. Waters § 212; Percival v. Williams, 82 Vt. 531, 74 A. 321.

We must examine the deed given by Dorsett to the Black Hills Traction Company to determine whether or not it contains an express or implied agreement that the Black Hills Traction Company, by their acceptance of the deed, contracted to either maintain the canal in perpetuity or in the alternative to provide Dorsett or his successors with free transportation of water to their farm by other means. If the deed can be so construed it would supersede the general rule previously stated. Missouri-Kansas-Texas Railroad Company v. Freer, Mo., 321 S.W.2d 731.

General rules of construction govern us in the effort to interpret and find the meaning of the original parties. 93 C.J.S. Waters § 221; 26 C.J.S. Deeds § 82.

In construing this deed we must endeavor to ascertain and enforce the intention of the parties. Under the rules of construction we must first try to arrive at this intention from a reading of the whole instrument, but if, in doing so, the language used leaves the intention of the parties in doubt then we must turn to and consider the situation and circumstances of the parties at the time of the execution of the deed in order to determine what was within their contemplation at that time. 17 Am.Jur.2d, Contracts, § 272; 26 C.J.S. Deeds § 92; Huffman v. Shevlin, 76 S.D. 84, 72 N.W.2d 852; Unke v. Thorpe, 75 S.D. 65, 59 N.W.2d 419.

■ We must also view this deed prospectively as the parties viewed it at the time of its execution and not from a retrospective point of view. 17 Am.Jur.2d, Contracts, § 240.

The rule of construction as stated in 23 Am.Jur.2d, Deeds, § 159, is particularly appropriate to this case:

"When, and only when, the meaning of a deed is not clear, or is ambiguous or uncertain, will a court of law or equity resort to established rules of construction to aid in the ascertainment of the grantor's intention by artificial means where such intention cannot otherwise be ascertained. Unlike a settled rule of property which has become a rule of law, rules of construction are subordinate and always yield to the intention of the parties, particularly the intention of the grantor, where such intention can be ascertained. Since all rules of construction are in essence but methods of reasoning which experience has taught are best calculated to lead to the intention of the parties, generally no rule will be adopted that tends to defeat that intention.

"The primary rule of construction is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible, when contrary to no settled rule of property which specifically ingrafts a particular meaning upon certain language, or when not contrary to, or violative of, settled principles of law or statutory prohibitions."

In construing this deed, we are aided by the testimony of Dorsett and by the representatives of the traction company, Hughes and Brenn, as to the circumstances surrounding the execution of the deed, as given by them under oath in the 1911 lawsuit.

Some general observations are pertinent. First, it appears obvious to us that the traction company did not obligate itself to build either the trolley line or the canal. It did obligate itself

to reconvey the strip of land to Dorsett if it did not construct either. Secondly, it is equally obvious that the traction company did not obligate itself to operate the trolley line for any specific period of time in the event the trolley was built. Thirdly, there is nothing in either the deed or the record, including the record of the 1911 lawsuit, to indicate that either Dorsett or the traction company considered the deed as obligating the traction company to operate the canal or hydroelectric plant for either a specified minimum period of time or for eternity.

We think, as did this court in 1912, that so long as water flows through the plaintiff's canal the defendants have an absolute right under the deed to take therefrom 125 miner's inches of water.

We believe the deed cannot be construed as obligating the plaintiff to continue to use the canal forever or to continue forever to make water available therein for the defendants. The canal is huge as compared to the relatively small quantity of water to which the defendants have a right, and it would be clearly impractical to operate this particular canal for the sole purpose of transporting defendants' water to defendants' farm. This fact would of necessity have been within the contemplation of the parties in 1905.

In construing the Dorsett-Black Hills Traction Company deed, in light of the provisions therein and the surrounding circumstances at the time the deed was executed by Dorsett and accepted by Black Hills Traction Company, we hold that the plaintiff herein is not obligated to either maintain the canal formerly used to transport water to its hydroelectric plant in order to transport water to defendants' farm or to transport the water to defendants' farm by alternate means or methods as defendants claim.

The parties to the deed could have entered into the agreement contended for by the defendants herein. Had they done so, it would be enforceable today. However, we find they did not do so.

Judgment affirmed.

HANSON, P. J., BIEGELMEIER and WOLLMAN, JJ., and BANDY, Retired Circuit Judge, concur.

JONES, Circuit Judge, acting pursuant to SDCL 16-1-5, sitting for RENTTO, J., disqualified.

BANDY, Retired Circuit Judge, acting by appointment pursuant to SDCL 16-8-13, sitting for WINANS, J., disqualified.