**Edna M. STEELE and Thomas J. Batcheller, Plaintiffs and Appellants,**

**v.**

**Ada E. PFEIFER, Robert E. Nelson, Peggy I. Nelson, Elton F. Johnson, Karmen C. Johnson, Kandace C. Johnson, Karla Lee Johnson, Lynn Henrickson and Josefina R. Henrickson, and all persons unknown who have or claim to have any interest in or lien or encumbrance upon the premises described in the Complaint, Defendants and Appellees.**

No. 13202.

Supreme Court of South Dakota.

Argued March 19, 1981.

Decided Oct. 7, 1981.

---

Robert L. Thomas of May, Johnson, Doyle & Becker, Sioux Falls, for plaintiffs and appellants; Joel T. Hagen of Burns & Hagen, Sioux Falls, on the brief.

Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendants and appellees.

DUNN, Justice (on reassignment).

This is an appeal from a judgment in a quiet title action subjecting the land in question to the terms and conditions of an easement for the use of a water well. We affirm.

In 1958 Howard and Selma Ahrendt (Ahrendts) purchased Lots 2, 3, 20, and Tract A of Lot 19; Carl W. (Carl) and Ada (Ada) Pfeifer purchased Lots 1 and 21; Loren (Loren) and Phyllis (Phyllis) Pfeifer purchased Lots 4, 5, 18, and Tract B of Lot 19. At the time of these purchases, these lots

were outside the city limits of Sioux Falls, South Dakota.

There was no public water supply to the properties, but Lot 20 contained an existing well. Prior to the purchases of the lots, the property owners discussed the possible use of the well and orally agreed to purchase and build a 3500-gallon reservoir, to install a master pump, and to have separate pumps draw water from the reservoir to the respective homes of the individual lot owners. They also agreed to share the costs of operating the well.

In 1959 the purchasers reduced their oral agreements to writing. They executed an "easement,"[1] and the following day they executed an "agreement."[2] Neither written document was recorded at that time. Over the years, the parties shared equally the use and costs of the well according to these documents.

Appellant Edna M. Steele (Steele) and her husband purchased Lot 20 and Tract A of Lot 19 from the Ahrendts in 1965. At the time of the purchase, the Steeles were informed by the realtor of the existence of the well and that other people were using it. About a week after the Steeles had moved into their new home, Loren and Phyllis went to the Steeles and explained the arrangements regarding the use of the well.

In 1970, after the death of both Loren and Steele's husband, Steele asked Phyllis what the agreement was concerning the well. Since neither Steele nor her husband had signed any papers concerning the use of the well, she was unsure of the specific contents of the agreement. Phyllis showed Steele the "agreement" that had been signed with the Ahrendts. Phyllis told Steele that she did not have any other

1. The pertinent parts of the "easement" are:
 WHEREAS, Howard J. Ahrendt and Selma G. Ahrendt are the owners of Lots 2, 3 Tract A of Lot 19, Lot 20 of Block 2 of Vista Ridge Addition . . ., and
 WHEREAS, to-wit, there is now a water well on Lot 20 of the above described property, and
 WHEREAS, Loren R. Pfeifer and Phyllis E. Pfeifer are the owners of Lots 4, 5, 18 and Tract B of Lot 19 . . ., and Carl W. Pfeifer and Ada E. Pfeifer are the owners of Lots 1 and 21 of the above described addition, and all of the above owners are desirous of using the well, and the water to be taken therefrom, that is on Lot 20, which is owned by the said Howard J. Ahrendt and Selma G. Ahrendt.
 NOW, THEREFORE, the said Howard J. Ahrendt and Selma G. Ahrendt, as grantors, in consideration of One Dollar ($1.00) and other good and valuable consideration, and the performance of the further covenants herein does hereby grant to Loren R. Pfeifer, Phyllis E. Pfeifer, Carl W. Pfeifer, and Ada E. Pfeifer, their successors or assigns the right to lay, maintain, operate, or replace at any time a pipeline or pipelines for the transportation of water, with right of ingress and egress to and from the same, a water well and storage tank on a portion of Lot 20 of the above described property and to run said water lines beneath the surface over Lot 20 to Lot 21, over Tract A of Lot 19, and to Tract B of Lot 19 and to Lot 18.
 Howard J. Ahrendt and Selma G. Ahrendt, as grantors, hereby grant unto the grantees, their heirs, administrators, executors and assignees, full and free right and authority to enter upon said property for the purpose of making connections, lay and keep in repair said pipe or water lines to their property.

2. The pertinent parts of the "agreement" are:
 NOW, THEREFORE, In consideration of One Dollar and the performance hereinafter set out, it is understood and agreed that the parties hereto, as a part of said consideration, agrees to erect and build adjacent to said well, on Lot 20, an underground well pit of such size and dimensions and such concrete material that they can mutually agree upon; install an automatic deep well pump; well pit 8' × 8' of concrete, with a manhole of sufficient size to install and remove pump and pump equipment; said parties hereto each to stand their pro rata share of the expenses of keeping said well, the pump and connections; after said well and storage tank is completed then the said Loren R. Pfeifer, Phyllis E. Pfeifer, Carl W. Pfeifer and Ada E. Pfeifer may connect up to said storage tank, at their own expense, water lines therefrom to a home that each couple intends to build adjacent to said property of said Howard J. Ahrendt and Selma G. Ahrendt; the said Pfeifers, after their cost of the erection of said water system is paid and their proportionate share of electric power and other expenses, are to have the water from said well from time of completion of said system.
 It is further understood and agreed that during the period the well is used by all parties of this agreement they will equally share the repair, upkeep, maintenance, for the proper operation of said water system.

documents regarding the well. Steele was not shown a copy of the "easement."

In 1970 Phyllis sold Lots 4 and 5 to Robert and Peggy Nelson (Nelsons). Prior to Nelsons' purchase, Carl and Phyllis informed them that there was an easement on the well, that they would own one-third of the well, that they had a right to use the well, and that they could go onto Lot 20 to look after the well. The property owners continued to use the well and share in its expenses after the Nelsons moved into their home.

After the lots in question were incorporated within the city limits of Sioux Falls, Steele petitioned for city water. She was connected to the public water system in November, 1973 and discontinued her use of the well. A short time later, Steele asked the Nelsons and Pfeifers to connect to the city water system and to discontinue their use of the well, since they had no further legal right to the well. Nelsons then attempted to locate a written easement. They found a copy of the "easement" at the Home Federal Savings and Loan in Sioux Falls. After discussing the validity of the "easement" with their attorneys, Nelsons recorded it on December 5, 1973.

On August 14, 1974, Steele executed a contract for deed for the sale of her land to Appellant Thomas J. Batcheller (Batcheller). Prior to the sale, Batcheller was informed of the problems surrounding the well and of the "easement." After the purchase, Nelsons and Batcheller discussed the use of the well. Nelsons informed Batcheller that they believed they had a legal right to use the well and that they would continue to do so. In 1974 Nelsons hooked up to the city water system, but continued to water the lawn and garden with the well water. Nelsons were unaware of the "agreement" until the night before this case went to trial.

In December of 1978 Steele and Batcheller began this quiet title action, which was tried to the court in August of 1979. On May 9, 1980, the circuit court found the easement to be a valid easement under South Dakota law and entered a judgment

in favor of appellees. The circuit court specifically held that "Tract A of Lot 19 and Lot 20 is [sic] subject to the easement . . . in favor of the owners, and their heirs, executors, administrators, successors and assigns of Lot 4, 5, 18, Tract B of Lot 19 and Lot 21." Conclusion of Law III.

This court presumes that the findings of fact of the circuit court are correct and places the burden to show error in the findings upon appellant. *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419 (S.D. 1980); *Hilde v. Flood*, 81 S.D. 25, 130 N.W.2d 100 (1964). We will not disturb the findings of the circuit court unless they are clearly erroneous. SDCL 15–6–52(a); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976).

Steele contends that the "easement" and "agreement" are void in light of SDCL 43–28–17, since the warranty deed transferring the property in question to her was recorded before the "easement." The provisions of SDCL 43–28–17 state:

> Every conveyance of real property other than a lease for a term not exceeding one year is void as against any subsequent purchaser or encumbrancer including an assignee of a mortgage, lease, or other conditional estate of the same property, or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded. The term "conveyance" as used in this section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to any real property may be affected, except wills and powers of attorney.

Appellees, however, rely on SDCL 43–28–14, which states: "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof."

Reading these provisions together and in harmony, it must be determined whether Steele was in fact a good faith purchaser without knowledge of the existence of the easement. The circuit court, in its Finding of Fact XVI, found that "Steele as the result of her conversation in 1965 with Lor-

en and Phyllis Pfeifer and the payments received from the Pfeifers and Nelsons had knowledge of facts that would have put a prudent person upon inquiry whether any unrecorded conveyance existed as to her property."

In the similar case of *Wiege v. Knock,* 293 N.W.2d 146, 148 (S.D.1980), we stated:

Appellants contend, however, that since no documents were on record revealing plaintiffs' water rights, they should not be bound to any permanent water right easement. We are not persuaded by this argument. Notice of an easement is generally imputed to a purchaser where the easement is of such character that a purchaser acting with ordinary diligence would know or learn of its existence. Thus, where the easement is open and visible, the purchaser will be charged with notice even though the easement was created by a grant which was not then recorded. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry.

"If facts are sufficient to put a purchaser of a title or lien upon inquiry of any adverse right or equity of a third party, his want of diligence in making such inquiry is equivalent to a want of good faith." *Madson v. Ballou,* 63 S.D. 501, 505, 260 N.W. 831, 833 (1935).

The circuit court found that Steele had sufficient facts to put a prudent person on inquiry. The circuit court properly imputed knowledge of the easement to Steele and concluded that it was valid under South Dakota law. We hold that there is sufficient evidence in the record to support the circuit court's findings of fact and conclusions of law in regard to this issue.

Appellants also contend that if the "easement" was valid, its effect is limited to the right to lay, maintain, operate, and replace water lines on appellant's property. They contend that the "agreement" grants the right to take water from the well, but that the "agreement" was a license, personal to the parties denominated therein, not assignable, and revocable.

The circuit court did not make findings of fact or conclusions of law regarding the "agreement," except to acknowledge its execution. The findings of fact and conclusions of law proposed by appellants, incorporating the above argument, were refused by the circuit court. The issue was properly before the circuit court and it ruled adversely to appellants. The issue has been briefed and argued, and is properly before us on appeal.

Appellants allege that the documents which were prepared by the same attorney and executed on successive days should be read together. We agree. In *Ponderosa-Nevada, Inc. v. Venners,* 90 S.D. 579, 584, 243 N.W.2d 801, 803 (S.D.1976) ([ ] in original) (citation omitted), this court said, " 'Where [there are] several contracts relating to the same matters, between the same parties and made as parts of the same transaction, they should be considered together and treated as one contract.' " The intent of the parties is controlling in construing the two writings. *First Trust & Savings Bank v. McVeigh,* 50 S.D. 604, 211 N.W. 446 (1926). Following this rationale, we do not consider the "agreement" to be a license but rather to be an addendum to and part of the "easement." Thus the question of assignability is moot.

The sole remaining question is whether the easement, as addended to, has been extinguished either under the terms of the grant or by disuse by the owner of the servitude.

The provisions of SDCL 43–13–5 state: "The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired."

There is no limitation set out in the terms of the easement or grant, either in years, or upon a happening of a particular event as a contingency. When no such limitation exists, it has generally been held to be permanent in nature and would continue in operation forever, unless aban-

doned by non-use. This is particularly true where words of inheritance are used. See *Kleinheider v. Phillips Pipe Line Co.*, 528 F.2d 837 (8th Cir. 1975); *Bladdick v. Ozark Ore Co.*, 381 S.W.2d 760 (Mo.1964); *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983 (1933); *Riley v. Pearson*, 120 Minn. 210, 139 N.W. 361 (1913). See also Annot., 154 A.L.R. 5 (1945); 25 Am.Jur.2d *Easements and Licenses* § 100 (1966).

 There is no claim of disuse, nor could there be under the evidence. The Nelsons have used the well continuously and have made payments for expenses and repairs of the well according to the agreement. There is no indication that the easement was granted for a particular purpose which had expired. Appellants argue that the history of the use of the well could indicate that the easement should expire when city water was available. We cannot read such a limitation into an agreement by inference. In fact SDCL 43-4-16 provides that the grant is to be interpreted in favor of the grantee.

The judgment of the circuit court is affirmed.

WOLLMAN, C. J., and HENDERSON, J., concur.

MORGAN and FOSHEIM, JJ., dissent.

MORGAN, Justice (dissenting).

I dissent.

I agree that the documents are to be read as one, but I disagree on the result.

I am convinced that a fair reading of the easement, including the terms of the agreement, in the light of the circumstances under which they were drafted and executed, indicates an intent to limit the easement for the use of and access to the water.

In pertinent part, SDCL 43-13-5 provides, "The extent of a servitude is determined by the terms of the grant[.]" An easement like any other estate in land may be a base, qualified or determinable fee; i. e., an estate which may last forever, but which may end on a merely possible event. *Eastman v. Piper*, 68 Cal.App. 554, 229 P. 1002, 1005 (1924).

Although the draftsmanship is not a model of clarity, by reading the documents together it is apparent to me that the last paragraph is a limitation on the use of the water. It provides,

> It is further understood and agreed that during the period the well is used by *all* parties of this agreement they will equally share the repair, upkeep, maintenance, for the proper operation of said water system. (Emphasis added.)

"The rules applicable to the construction of deeds generally apply with full force and effect to instruments conveying easements or other similar rights and privileges." *Flynn v. Michigan-Wisconsin Pipeline Company*, 161 N.W.2d 56, 64 (Iowa 1968).

In construing this deed we must endeavor to ascertain and enforce the intention of the parties. Under the rules of construction we must first try to arrive at this intention from a reading of the whole instrument, but if, in doing so, the language used leaves the intention of the parties in doubt then we must turn to and consider the situation and circumstances of the parties at the time of the execution of the deed in order to determine what was within their contemplation at that time.

*Black Hills Power & Light Co. v. Schuft*, 86 S.D. 194, 193 N.W.2d 429, 432 (1972).

To properly construe this agreement, I look to the history of the development and use of the well to determine the intent of the parties. At the time the agreement was entered into the well was the sole source of water readily available in the vicinity. As Carl Pfeifer, one of the signatories to the agreement, testified, the agreement was entered into to relieve the Pfeifer families of the necessity of drilling wells to secure water for the houses they were building in the immediate area. At that time, the area was outside the city limits of Sioux Falls and city water was not available. Subsequently, the city limits were extended. Consequently, all of the parties or their successors in interest, including Nelsons, acquired city water service several years ago. Because Nelsons alone

desire to continue the use of the water solely for the purpose of watering their lawn and garden, apparently, the majority reads the last paragraph, quoted above, as "used by *any* party." One party's use does not mean "*all* parties." (Emphasis added.)

Applying the majority's interpretation, now Nelsons may be able to require the other parties to share in the expense of upkeep. As I construe the provision quoted above, it was the intent of the parties that the agreement would be binding until city water was available. The use of the well has changed from a matter of necessity to all the property owners to a matter of convenience for one of them. The fact that Steele gave notice of revocation is undisputed.

Reading and construing the documents together, as urged by the appellees, I would hold that the easement has expired, reverse the judgment of the trial court and remand with instructions to enter judgment in favor of appellants as prayed for in their complaint.

I am authorized to state that Justice FOSHEIM joins in this dissent.