**WEST CENTRAL ELECTRIC COOPERATIVE, INC., Plaintiff and Appellee,**

v.

**JAMES RIVER BROADCASTING CO., d/b/a KGFX, Defendant and Appellant.**

No. 15053.

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 1986.

Decided Sept. 3, 1986.

Rehearing Denied Oct. 9, 1986.

2. Instruction #3 is set forth in full in the majority opinion on page 81.

David J. Larson, Larson, Sundall, Larson, Schaub & Fox, Chamberlain, for plaintiff and appellee.

Gary F. Colwill, Schmidt, Schroyer, Colwill & Zinter, Pierre, for defendant and appellant.

HERTZ, Acting Justice.

James River Broadcasting Co. (James River), appeals from an order granting summary judgment to West Central Electric Cooperative, Inc. (West Central). We reverse and remand.

### Statement of Facts

West Central is a South Dakota electrical cooperative which provides electricity to consumers in Lyman, Jones, Stanley, Jackson, Mellette, and Haakon counties. James River is a South Dakota corporation which operates KGFX Radio Station.

James River maintains a broadcast facility approximately five miles south of Ft. Pierre, South Dakota, on U.S. Highway 83. The present dispute arose over West Central's desire to construct an electrical transmission line across James River's property from the northwest. The purpose of this line was to linkup a new substation with an existing line which crosses the property from the south to a point within a few feet of James River's building.

West Central claims the right to construct the new line by virtue of two unrecorded easements which it obtained from James River's predecessor in interest, Black Hills Radio, Inc., (Black Hills Radio). The two easements were granted in 1965 and 1966, respectively. James River purchased Radio Station KGFX in 1968. The trial court found that James River did not know of the existence of West Central's two written easements, nor the contents thereof, when it purchased KGFX in 1968.

West Central acquired the first easement in June of 1965 from James A. Wyly, the then record owner of the subject property. This easement gave West Central the right "to place, construct, ... in or upon all ... highways abutting said lands an electric transmission or distribution line or system ..." Thereafter, West Central constructed the line referenced above which approaches the KGFX broadcast facility from the south and provides power to the tower site. The 1965 easement was never recorded. James River admitted constructive notice of this easement, however, because the line's existence is open and obvious from a viewing of the premises.

In 1966, West Central obtained another right-of-way easement from Black Hills Radio. This easement authorized West Central to do the following:

> [T]o place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said lands an electric transmission or distribution line or system and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.*

---

* In February 1983, Mach Wyly, the current owner of the tower site property, gave West Central another right-of-way easement. The language of this easement is substantially similar to that

The 1966 easement remained unrecorded until shortly before West Central initiated the present declaratory judgment action in March of 1984. The record shows that this easement was executed after West Central placed the existing line to the south of the KGFX building.

Upon learning of West Central's plan, James River informed them that the new power line would interfere with KGFX's broadcast signal and cause substantial damage to the radio station. To avoid violating their FCC license, James River estimated a cost of at least $50,000 to re-engineer its broadcast signal due to the anticipated interference caused by the northwest power line. As an alternative, they requested that the line be placed underground.

Apart from their claim of right under the easements, West Central responded that the cost of re-routing the transmission line would be substantially greater than the cost of re-aiming James River's broadcast signal. Moreover, West Central stated that its policy relating to undergrounding lines dictated that the increased cost be paid by the requesting party. They further argued that the northwest line is crucial to provide Stanley and northern Lyman counties with reliable electrical service in view of the fact that their present outage rate is some 200% that of the balance of West Central's service area.

On March 16, 1984, West Central commenced a declaratory judgment action to establish its right to construct the northwest transmission line allegedly authorized by the 1965 and 1966 easements. Thereafter, both parties filed motions for summary judgment.

In granting West Central's motion, the trial court found that despite the fact that the easements were unrecorded, the southern transmission line was, nevertheless, in place and clearly visible upon an inspection of the premises when James River purchased the radio station in 1968. Thus, the

of the previous ones mentioned, *supra.* Whether or not this easement was recorded is unclear

trial court held that the southern line imputed constructive notice of the 1966 easement to James River who was bound to make further inquiry. The trial court entered its order on May 27, 1985, and this appeal followed.

James River now contends that actual notice of the southern power line, constructed in reference to the 1965 easement, did not give them constructive notice of the 1966 easement which went unrecorded until the inception of this litigation, and from which West Central claims the present right to construct the northwest power line.

We consider the sole issue on appeal as whether the summary judgment entered by the trial court against James River was proper? We hold that it was not.

In determining whether summary judgment was proper in *Hamaker v. Kenwel-Jackson,* 387 N.W.2d 515, 517 (S.D.1986), we stated:

In summary judgment, the burden of proof is on the moving party to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. Summary judgment is an extreme remedy and is not intended as a substitute for a trial.

*Wilson v. Great Northern Railway Company,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

The trial court relied heavily upon *Weige v. Knock,* 293 N.W.2d 146 (S.D.1980), in which we held that a continuously used and obvious well, imputed constructive notice of an unrecorded easement for the permanent and transferable right to use the water from the well. In *Weige,* the appellants argued that since no documents were on record revealing the appellees' water rights, that the appellants should not be

from the record.

bound to any permanent water right easement. In rejecting this argument, we wrote:

> Notice of an easement is generally imputed to a purchaser where the easement is of such character that a purchaser acting with ordinary diligence would know or learn of its existence. Thus, where the easement is open and visible, the purchaser will be charged with notice even though the easement was created by a grant which was not then recorded. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. (citations omitted).

*Id.* at 148.

In *Weige,* when the appellants' originally purchased the property which contained the well, they were aware that appellees' house was supplied by water from the well, that the well was located by an easement on the appellees' lot, that their original grantor had previously owned and developed all of the property served by the well, and that water was at a premium in the area. *Id.* Under the facts of *Weige,* therefore, we found the evidence sufficient to charge the appellants with notice of the appellees' water rights despite the fact that the easement was unrecorded.

Here, if we were only concerned about the 1965 easement, then this action would be disposed of under *Weige, supra.* However, James River does not dispute the fact that they had constructive notice of the 1965 easement. On the contrary, the southern power line was open, obvious, and visible to James River when they purchased KGFX in 1968. Rather, James River contends that their knowledge of the southern power line in no way gave them actual or constructive notice of the 1966 easement which West Central chose not to record until litigation was imminent, and from which they now claim the right to construct the northwest power line some 20 years later.

Actual notice consists in express information. SDCL 17–1–2. The trial court found that James River had no knowledge of the 1965 or 1966 easements when it bought the radio station, due to the fact that the easements were unrecorded. Constructive notice is notice imputed by the law to a person not having actual notice. SDCL 17–1–3. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. SDCL 17–1–4.

A similar factual situation is found in *State v. Cinko,* 155 Ind.App. 357, 292 N.E.2d 847 (1973). In this case, the Cinkos were the owners of two contiguous tracts of land abutting a public highway in Lake County, Indiana. The State sought to enjoin the Cinkos from interfering with its removal of an advertising sign located upon a portion of the Cinko property which allegedly encroached upon the Indiana State Highway Commission right-of-way. *Id.* at 848. Analogous to the case at bar, the purported right-of-way was acquired by the State from a predecessor in title of the Cinkos and the easement in reference thereto was never recorded; nor was the right-of-way marked or designated on the land. *Id.* At the time the Cinkos purchased and took possession of the property, the advertising sign was in its present location. Thereafter, the Cinkos personally maintained the shoulder of the highway up to the pavement as part of their premises. *Id.*

In affirming summary judgment for the Cinkos, the court stated:

> [C]onstructive notice of the extent of the right-of-way is not attributable to Mr. and Mrs. Cinko. The instrument by which the right-of-way was granted was not filed of record. The State was not in possession of the land where the advertising sign was located, nor were the boundaries of the right-of-way marked on the land.

*Id.* The court held, therefore, that the right-of-way claimed by the State was invalid as against the purchasers. It further held that the Cinkos had no notice of facts sufficient to put them on inquiry that the boundary of the right-of-way might extend beyond the paved and traveled portion of the highway. *Id.* at 849.

Here, West Central claims that its right to construct the northwest power line arises from the 1966 easement which, for all intents and purposes, was not recorded. Nor has West Central attempted at any time to designate its claimed right-of-way with markers placed upon the land in controversy. It is undisputed that the southern transmission line was built in reference to the 1965 easement, and that the 1966 easement was executed after the line was in place. Although unclear from the record, it appears that there was no physical indicia on the property itself, (after the southern line was constructed), to indicate that an additional right-of-way had been acquired along James River's property. Under the standard set forth in SDCL 17–1–4 and the *Cinko* rationale, a genuine issue of material fact exists as to whether James River had notice, actual or constructive, of facts sufficient to put them on inquiry of West Central's claimed rights under the 1966 easement despite the presence of the southern power line.

In deciding whether summary judgment is proper, we must view the evidence most favorably to James River. *Hamaker,* 387 N.W.2d at 517. Whether or not notice is given or received is a question of fact to be determined by the trier of fact. *Colorado Interstate Gas Co. v. Dufield,* 9 Kan. App.2d 428, 681 P.2d 25, 28 (1984). Similarly, in *Larson v. New Haven, T.p., Olsted County,* 282 Minn. 447, 165 N.W.2d 543, 547 (1969), the Minnesota Supreme Court stated that notice is ordinarily a jury question. "[S]ummary judgment is appropriate to dispose of legal, not factual questions." *Hamaker, supra.*

Therefore, based upon all the facts of this case, we hold that whether James River had constructive notice of the 1966 ease-ment was a genuine issue of material fact which was inappropriate for summary disposition. It follows that the trial court's order granting summary judgment to West Central must be reversed and this case remanded. As such, we need not reach the inverse condemnation issue briefed by the parties.

We accordingly reverse and remand this case to the trial court for further proceedings.

All the Justices concur.

SABERS, J., not having been a member of the court at the time this action was submitted to the court, did not participate.