Elmer WIEGE and Delores R. Wiege,
Plaintiffs and Appellees,

v.

Calvin N. KNOCK and Audrey J. Knock,
Defendants, Third-Party Plaintiffs
and Appellants,

v.

Herman W. PIEBENGA and Esther C.
Piebenga, Third-Party Defendants
and Appellees.

No. 12824.

Supreme Court of South Dakota.

Argued March 18, 1980.

Decided June 11, 1980.

Edward C. Carpenter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for plaintiffs and appellees.

George Beal, Rapid City, for defendants and third-party plaintiffs and appellants.

James W. Olson of Wilson, Bottum, Olson, Goodsell & Nash, Rapid City, for third-party defendants and appellees.

FOSHEIM, Justice.

This is an appeal from a judgment determining the rights and duties of the parties concerning the water from a well located on private property. We affirm in part and reverse in part.

The third-party defendants, Herman W. Piebenga and Esther C. Piebenga, purchased a tract of land south of Rapid City. On part of this property they developed a commercial campground. The tract was platted. One lot, on which a well had been dug and equipped, was sold to the Piebengas' son. In that deed, a perpetual water easement in the well was reserved to the grantors. This lot was subsequently acquired by the plaintiffs and appellees herein, Elmer Wiege and Delores R. Wiege. The defendants and appellants herein, Calvin N. Knock and Audrey J. Knock, subsequently purchased the dominant tenement land to which the easement is attached. On January 2, 1975, the Piebengas entered into a water-use agreement with the plaintiffs. On August 27, 1975, the Knocks and Wieges entered into a similar agreement including a rate schedule. In November of 1976, the defendants advised the plaintiffs that the water to their residence would be cut off unless they agreed within two weeks to pay $15.00 per month for water and certain other fees. The Wieges then sought declaratory and injunctive relief and damages. The Knocks resisted this action and sought damages and indemnity from the third-party defendants, Herman and Esther Piebenga. The trial court concluded that the Wiege property carried a permanent transferable water right and made a determination as to water allocation and rates. The trial court denied both the Wieges' claim for damages and the Knocks' claim for damages and indemnity. From the trial court's judgment, the Knocks appeal.

The basic issue assigned by appellants Calvin and Audrey Knock is whether the Wieges have a permanent transferable right to use the water from the well located on their land. The warranty deed from Piebengas to their son contained the following reservation:

[S]ubject to . . . a right in the Grantors, and their heirs, successors and assigns, to keep, repair and maintain thereon a water well, pumps, holding and pressure tanks, and such other equipment as may be necessary and required to keep, operate and maintain the same, and to draw the water therefrom, and to otherwise have a right of ingress and egress thereto.

The trial court found that the Piebengas intended by that reservation to vest permanent rights to water from the well on the lot burdened with the servitude.

In *Sheffield Water Co. v. Elk Tanning Co.*, 225 Pa. 614, 622, 74 A. 742, 745 (1909), the Supreme Court of Pennsylvania construed a similar easement reservation in this language: "The reservation of an easement in land conveyed does not of itself import a use to the exclusion of the owner." In *Homes Development Co., Inc. v. Simmons*, 75 S.D. 575, 70 N.W.2d 527 (1955), after quoting statutes which have been in force since territorial days and now appear as SDCL 43–1–5, 43–4–18 and 43–25–30,[1] we adopted the generally recognized rule that where, during unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law. *See also: Loughman v. Couchman*, 242 Iowa 885, 47 N.W.2d 152 (1951). "Similarly, where the owner of property, one part of which has been subjected to such a use for the benefit of another part, sells both parts to different purchasers, the respective portions granted are subject to or benefited by, as the case may be, an easement corresponding to such use." 25 Am.Jur.2d Easements and Licenses § 27 (1966).

It appears from the facts found by the court and supported by the evidence, that before there was a separation of title to the property, the use of the well had so long continued and was so obvious and manifest as to show that it was meant to be permanent. It follows that all of the elements essential to create an easement or servitude by implication of law upon the severance of the unity of ownership in an estate were present in this case.

Appellants contend, however, that since no documents were on record revealing plaintiffs' water rights, they should not be bound to any permanent water right easement. We are not persuaded by this argument. Notice of an easement is generally imputed to a purchaser where the easement is of such character that a purchaser acting with ordinary diligence would know or learn of its existence. Thus, where the easement is open and visible, the purchaser will be charged with notice even though the easement was created by a grant which was not then recorded. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. *Gilmore v. New Beck Levee District, Harrison County*, 212 N.W.2d 477 (Iowa 1973); *Putnam v. Dickinson*, 142 N.W.2d 111 (N.D.1966); *Magnuson v. Coburn*, 154 Neb. 24, 46 N.W.2d 775 (1951); 28 C.J.S. Easements § 49 (1941).

According to the evidence, appellants were aware when they purchased the campground that the Wiege house was supplied by the well, that the well was located by an easement on the Wieges' lot, and that the Piebengas had previously owned and developed all of the property served by the well. They also knew that water was a premium commodity in that area. We therefore conclude that the trial court correctly found that the Wieges have a permanent transferable water right to the use of the water from the well located on their

---

1. SDCL 43–1–5, provides, in pertinent part:

   A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit . . .

   SDCL 43–4–18:

   The transfer of a thing transfers also all its incidents unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself.

   SDCL 43–25–30:

   A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.

property and that appellants are charged with notice of that right.

■ Appellants next contend the trial court erred when it allocated 25% of the well output to the Wiege property. Under the terms of a water use agreement, Calvin N. Knock and Audrey J. Knock, doing business as the Knock Water Company, agreed to provide water to the Wieges' existing residence. The Company agreed to maintain the water system within the well-pit. Otherwise, the costs of repair, replacement and maintenance were to be the expense of the user. The Company agreed to furnish a reasonable quantity of water each month for use by the user solely for domestic use in a single family dwelling, but reserved the right to ration water among all users on the system in the event of a shortage, drought or by reason of any other system failure.

The agreement provided that it "shall remain in full force and effect for so long as the Users reside at or maintain the premises described herein or covered by this agreement." Appellants contend that even though the Wieges do have permanent transferable water rights, they, as owners of the water system, have priority to all the water for their bona fide needs by virtue of the provisions in the water use agreement allowing them the right to ration the water in the event of a shortage, drought, or a failure in the water system.

In our opinion, the water use agreement is consistent with the determination that plaintiffs' property is favored with a permanent, transferable right to the use of water from the well in question. It essentially defines the mechanics for distribution and payment for use of the water. Both signators to the original agreement testified that the water agreement was not intended to cancel the preexisting permanent water right appurtenant to the Wiege lot. Furthermore, the agreement itself, referring to "any construction, repair or maintenance . . . done by the Company [Knocks], *within any easement held by it,*" expressly implies the existence of an easement with a dominant tenement in the Knocks.

Having concluded that the water agreement was intended to temporarily supplement and define the permanent water right covenant, we need not consider what the specific rights of the parties would be in the absence of that contract. The respective rights and duties of the parties must accordingly be found within the context of that agreement. The trial court determination that the Wieges' property was entitled to 25% of the water from the well in the event of a water shortage does not find a basis in the water agreement. It cannot be determined from the agreement that 25% or any other percentage of the well output can be appropriately allocated. Neither the prayer for relief of plaintiffs nor that of defendants requests a court-mandated allocation. The agreement reserves the right in the Knocks to ration water among all users on the system in the event of a shortage, drought, or by reason of any system failure. There is nothing in the record to indicate that the well does not presently supply sufficient water for all users. We cannot speculate as to contingencies which may never occur during the term of the water agreement. Furthermore, we must assume that if supply problems arise, they can and will then be resolved by the parties within the terms of their contract.

We next turn to the questions submitted for review by appellees. They contend that defendants have failed to establish that written notice of increase in water rates was given pursuant to this provision in the water agreement: "The Company agrees to notify the Users, not less than thirty days in writing, of any rate adjustment, and the purpose of such adjustment." The record does not reveal that such notice was given. Plaintiffs further contend that the evidence does not support the trial court's finding that $20.00 per month is a reasonable rate for water usage.

Unlike the easement, the water use agreement provisions are not transferable and do not run with the land. It remains in effect only so long as plaintiffs reside at their premises. The charge to be made is covered in this part of the agreement.

The Users hereby agree to pay to the Company a monthly charge, based upon a water rate, from time to time established by the Company, which rate shall not only be based upon the water consumed by the User, but which rate may also include a reasonable sum to cover operating costs, and the costs of installing all new facilities, the replacement of existing facilities, and the recoupment by the Company of its initial investment.

Plaintiffs concede that they have a duty to pay a reasonable amount for the maintenance of the water system, and the water use agreement provides a basis and procedure for determining that amount. That procedure was not followed. This does not mean, however, that the court should thereupon endeavor to make that determination for them. *Niagara Fire Ins. Co. v. Pospisil*, 52 F.2d 709 (8th Cir. 1931); *Loescher v. Policky*, 84 S.D. 477, 173 N.W.2d 50 (1969); *Knapp v. Breeding*, 77 S.D. 551, 95 N.W.2d 535 (1959).

We have considered the other assignments of error submitted by both the appellant and appellee and find that, in view of the conclusions reached, they are either unnecessary to decide, are to be resolved within the terms of the agreement, or concern parts of the decision of the trial court which have not been shown to be clearly erroneous. *Cunningham v. Yankton Clinic, P. A.*, 262 N.W.2d 508 (S.D.1978).

The judgment of the trial court is accordingly affirmed as to the permanent transferable water right and reversed as to water allocation and rates.

All the Justices concur.