George A. TOWNSEND and Lewis F. Weinberg, d/b/a TW–Yankton Properties, Plaintiffs and Appellants,

v.

YANKTON SUPER 8 MOTEL, INC. and Blue Fox Bar, a South Dakota Corporation, Defendants and Appellees.

No. 14473.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1984.

Decided July 3, 1985.

Denis R. Eckert, Elk Point, for plaintiffs and appellants.

Joseph P. Barnett of Siegel, Barnett & Schutz Aberdeen, for defendant and appellee Yankton Super 8 Motel, Inc.

C.E. Light of Light Law Offices Yankton, for defendant and appellee Blue Fox Bar, A South Dakota Corp.

WOLLMAN, Justice.

Plaintiffs brought this action asking for a judgment establishing an easement for seventy-eight automobile parking spaces on property owned by defendant, Blue Fox Bar, and for costs and attorney fees

against Yankton Super 8 Motel, Inc. (Super 8) incurred in securing such easement. Blue Fox Bar and Super 8 filed cross-claims against each other. The trial court entered judgment decreeing that plaintiffs have an easement for seventy-eight parking spaces on Blue Fox Bar's property conditioned on plaintiff's continuing use of their property for restaurant purposes. The judgment ordered Super 8 to pay the attorney fees and costs incurred by Blue Fox Bar in defending the action. Super 8 has satisfied that portion of the judgment entered against it. Plaintiffs have appealed from that portion of the judgment limiting the easement to its use of the property for restaurant purposes. Blue Fox Bar has appealed from that portion of the judgment awarding plaintiffs an easement on its property. We affirm the judgment in its entirety.

Plaintiffs owned the following described real estate in Yankton County:

Lots A, B, and C of Lot 6 in the Northwest Quarter of the Northeast Quarter, Section 17, Township 93 North, Range 55, West of the 5th P.M.

A plat of Lots A, B, and C was filed and recorded in the office of the Register of Deeds, Yankton County, Yankton, South Dakota, on February 25, 1975. That plat outlines the property in question as follows:

(The dimensions of Lot A are ninety feet by ninety feet.)

By warranty deed dated March 10, 1975, Super 8, through its shareholders, Dennis Brown and Ronald Rivett, purchased Lot B from plaintiffs. On March 20, 1975, plaintiffs and Super 8 executed an instrument entitled, "Water-Sewer-Paving Agreement." This agreement provided in part that

> [i]n consideration of the sale by [plaintiffs] to and the purchase by Super 8 of certain property on Highway 50, East of Yankton, and in further consideration of the mutual benefit to the parties through the construction and operation of a motel adjoined by a restaurant on said premises, it is hereby agreed as follows ... [I]t further agreed [sic] that said restaurant shall have the use of 78 parking spaces as shown on the attached plot plan for its customer and employee parking.

At the request of the owners of Super 8, this agreement was not recorded.

Following the sale of Lot B to Super 8, plaintiffs built a restaurant on Lot A.

Brown and Rivett transferred the shares of Super 8 to one Wendell Unverzagt. In turn, Unverzagt later negotiated with Valgene Stratman, majority stockholder in Blue Fox Bar, for the sale to Blue Fox Bar of Lot B and the motel thereon for a price of $950,000. Super 8 represented in its purchase agreement and contract for deed with Blue Fox Bar that it would transfer the property free and clear of all encumbrances. Following his conveyance of Lot B to Blue Fox Bar, Unverzagt forfeited his interest in the shares of Super 8, whereupon ownership was reassumed by Brown and Rivett.

At the time he was negotiating for the purchase of Lot B, Stratman made no inquiry concerning the lot lines of the lot; he did not request or inspect any plat of the premises; he did not request or inspect an abstract of title to the premises; he did not physically inspect the premises to determine what real estate was included; and he did not determine the area of the property

he was purchasing. He was aware that the motel and the restaurant were in close proximity, having been in the restaurant during the time that he was negotiating the purchase of Lot B. He was aware that the parking lot whereon customers of both the motel and the restaurant parked was one continuous lot that had no outward physical markings or characteristics that might indicate the line between Lot A and Lot B. Stratman acknowledged that had he looked at the plat of the premises prior to the purchase he would have known that there must have been some parking arrangement between the owners of the restaurant and of the motel.

At the time Blue Fox Bar purchased Lot B, the restaurant located on Lot A was operated under the name of Smitty's Pancake House. It later changed to a Perkins franchise and then to an Uncle Ike's franchise. During the period that the restaurant was operated as Uncle Ike's, Stratman subleased it from Broha, Inc., which was managing the restaurant for plaintiffs. Stratman made no inquiry about the size of Lot A or the parking facilities or arrangements of either the restaurant or the motel at the time he entered into the restaurant lease.

Plaintiffs offer two arguments in support of the trial court's decision. First, they say that a parking easement for the benefit of Lot A existed by implication of law, citing our holdings in *Homes Development Co. v. Simmons*, 75 S.D. 575, 70 N.W.2d 527 (1955) and in *Wiege v. Knock*, 293 N.W.2d 146 (S.D.1980). We conclude, however, that plaintiffs' reliance upon these cases is misplaced. In *Simmons*, this court stated:

> It is a well settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a

grant of the right to continue such use arises by implication of law.. . .

The rule is expressed in 1 Thompson on Real Property, Perm.Ed., page 636, § 392, as follows:

"* * * The rule is general that, where an owner conveys part of his land, he impliedly grants all those apparent or visible easements upon the part retained, which were at the time used by the grantor for the benefit of the part conveyed and which are reasonably necessary for the use of that part."

75 S.D. at 580, 70 N.W.2d at 530.

■ We followed and applied this rule in *Wiege, supra.* The rule, however, is not applicable to the facts in the case at hand inasmuch as having earlier conveyed Lot B to Super 8, plaintiffs could not thereafter grant an implied easement in favor of Lot A upon Lot B. There having been no parking easement in favor of Lot A at the time plaintiffs divested themselves to title to Lot B, plaintiffs could not thereafter create such an easement by implication merely by establishing a restaurant on Lot A.

The other rationale offered by plaintiffs, and the one that the trial court relied upon is more plausible. The trial court held, and we think correctly so, that Stratman did not act as a reasonably prudent purchaser and therefore was not a good faith purchaser without notice of the existing easement for parking purposes.

SDCL 17–1–4 provides:

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

"If facts are sufficient to put a purchaser of a title or lien upon inquiry of any adverse right or equity of a third party, his want of diligence in making such inquiry is equivalent to a want of good faith." *Madson v. Ballou,* 63 S.D. 501, 505, 260 N.W. 831, 833 (1935).

In holding that the purchasers of real property were bound by an unrecorded water right easement, we held in *Wiege v. Knock, supra,* that:

Notice of an easement is generally imputed to a purchaser where the easement is of such character that a purchaser acting with ordinary diligence would know or learn of its existence. Thus, where the easement is open and visible, the purchaser will be charged with notice even though the easement was created by a grant which was not then recorded. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry.

293 N.W.2d at 148. *See also Steele v. Pfeifer,* 310 N.W.2d 782 (S.D.1981).

■ Likewise in the instant case, we conclude that Stratman, acting on behalf of Blue Fox Bar, was charged with knowledge of facts sufficient to put a prudent buyer on inquiry. He knew from personal observation that customers of the restaurant were parking in the common area that lay between the restaurant and the motel. It strikes us, as it did the trial court, as more than passing strange that anyone who was about to pay nearly one million dollars for a piece of real estate would not make an effort to locate with some degree of accuracy the area of the property that he was buying or the property lines thereof. Even a momentary glance at a plat of Lots A and B would have disclosed that the area of Lot A was simply too small to provide parking adequate to serve the needs of the customers of the restaurant.

In the light of Stratman's observation of the parking of vehicles in the area that appeared common to the restaurant and the motel, we hold that SDCL 17–1–4 charges him with constructive notice of the fact that a parking easement on Lot B existed for the benefit of Lot A.

■ Plaintiffs contend that the trial court erred in conditioning the parking easement upon plaintiffs' use of Lot A for

restaurant purposes. SDCL 43–13–5 states: "The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." In view of the fact that plaintiffs negotiated for an easement for a specific, restrictive purpose, they will not now be heard to complain because the trial court did not expand it. *Cf. Steele v. Pfeifer, supra.*

The judgment is affirmed.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.