1996 SD 128

**TAN CORP., a South Dakota Corporation, Howes Oil Co., a South Dakota Corporation, and Dan Vrooman, Plaintiffs and Appellees,**

v.

**Jorge JOHNSON, M.D., Defendant and Appellant.**

**No. 19423.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1996.

Decided Oct. 30, 1996.

---

Monte R. Walz of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiffs and appellees.

Stuart L. Tiede, Elizabeth A. Lewis of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Tan Corporation, Michael Howes and Dan Vrooman (Plaintiffs) brought an action to establish an easement for ingress and egress between property owned by them and certain property owned by Dr. Jorge Johnson (Johnson). Johnson cross-claimed to quiet title. The trial court entered judgment for Plaintiffs and denied Johnson's motion to quiet title. Johnson appeals. We affirm.

## FACTS

[¶ 2] The property in dispute is located in Tracts 2 and 3 of a commercial development known as Cherry Creek Addition to Sioux Falls and is bounded on the west by Cleveland Avenue and on the south by 26th Street. In 1975, Tract 2 was owned by the Bahnson family, who in turn leased the property to Hegg Bohlen Development Company (Development Company). In 1977, Development Company subleased Lot C of Tract 2 to Howes Oil Company (Howes Oil). Howes Oil assigned its sublease rights to Michael Howes (Howes), who constructed a gas station on the property. Howes subsequently subleased the property to Dan Vrooman (Vrooman), who has operated the gas station at its present location since 1977. During this same time, Development Company constructed the Willow Creek Professional Building on Lot A of Tract 2 and the Hegg Realty Building on Lot D of Tract 2.

[¶ 3] In 1984, Peter Hegg (Hegg) purchased most of Tract 2 from the Bahnson family. He also acquired all right, title and interest of Development Company in Lots B and C of Tract 2. Hegg then conveyed his interests in Lots A and D of Tract 2 to Development Company. As a result of this series of transactions, Development Company owned Lot A (Willow Creek Professional Building) and Lot D (Hegg Realty Building) and Hegg owned Lot B (undeveloped) and Lot C (the gas station).

[¶ 4] On July 23, 1984, Hegg entered into a purchase agreement with Central Plains Clinic (CPC) for the sale of Lot B of Tract 2. (This land was subsequently replatted as Lot E of Tract 2.) The purchase agreement specifically provided:

That portion of the Real Estate on the southern boundary in an amount not less than what currently exists in Lot D of Tract 2 shall be used solely for parking, driveways, and sidewalks. This covenant of Buyer is intended to provide clear passage of vehicles through the southern portion of Lots B, C, and D of Tract 2, consistent with the present layout of Lot D.

The purchase agreement also prohibited any barriers from being erected or maintained which might impede traffic or parking between the lots. This covenant was to be required of all Tract 2 purchasers because of the creation of a campus-style development, which would provide mutual interconnecting routes within the Tract. This purchase agreement was not recorded by the parties.

[¶ 5] CPC constructed an office building, parking lot, curbs and a curb cut on the eastern boundary of Lot E, connecting Lots E and F by an improved driveway. It thereafter conveyed Lot E to Medical Associates. Medical Associates entered into a Mutual and Reciprocal Easement Agreement with Hegg and Dr. Gayle Nelson (Nelson), owners of Lot G, to create a common driveway for automobile and pedestrian traffic between Lots E and G.

[¶ 6] On August 29, 1984, Hegg entered into a purchase agreement with Tan Corporation (Tan) for the sale of Lot C and additional surrounding land. Tan ultimately purchased Lot C and the surrounding land platted as Lot F of Tract 2 and Lot B of Tract 3. On January 1, 1985, Hegg conveyed these lots to Tan and, at the same time, Tan granted Hegg an easement across Lot B in Tract 3. This easement was recorded with the Minnehaha County Register

of Deeds. Vrooman subleased Lot C from Tan and continued to operate the gas station.

[¶ 7] In 1987, Medical Associates reconveyed its interest in Lot E to CPC. In 1989, Johnson entered into an agreement with CPC to purchase Lot E of Tract 2. At the time Johnson agreed to purchase Lot E, he was not informed of any unrecorded easements or covenants for parking or ingress and egress.* Nor was Johnson provided with a copy of the purchase agreement between CPC and Hegg. However, at all material times, including the time of purchase, the gas station was in full operation next door and the improved driveway connecting the gas station property and Lot E was in existence and in visible use. Johnson was also aware of the Mutual and Reciprocal Easement Agreement concerning the common driveway between Lots E and G. Prior to purchase, Johnson made no inquiry about the common driveway between Lots C, E and F or any agreements regarding the driveway. Lot E was conveyed to Johnson by warranty deed dated January 3, 1990.

[¶ 8] In 1993, street construction temporarily closed the intersection of 26th Street and Cleveland Avenue. As a result, the use of the driveway between Lots C, E and F increased. Citing complaints from patients, Johnson chained off the driveway between the lots to prevent use of the driveway by gas station customers attempting to avoid the construction. Plaintiffs brought suit, alleging Lot E was impressed with an easement between Lot E and adjoining Lots C and F. Johnson counter-claimed to quiet title in Lot E. Summary judgment was granted in favor of Plaintiffs.

### STANDARD OF REVIEW

In this case, the parties agree no genuine issues of material fact exist. Therefore, our review is limited to determining whether the trial court correctly applied the law. *De Smet Insurance Co. v. Gibson*, 1996 SD 102, ¶ 5, 552 N.W.2d 98.

---

\* A title search in connection with acquiring title insurance indicated no recorded easement concerning the driveway.

### [¶ 10] I. Whether Johnson had notice of the existence of an unrecorded easement.

[¶ 11] Johnson contends he acquired the property free and clear of all easements, covenants and encumbrances. He contends he was without actual or constructive notice of any easement between Lots C, E and F because none was recorded and the circumstances surrounding the use of the driveway were not sufficient to indicate the presence of an easement.

[¶ 12] It is undisputed that the purchase agreement between Hegg and CPC was not recorded. Plaintiffs do not dispute that Johnson had no actual notice of an easement between Lots C, E and F. *See* SDCL 17-1-2. However, Plaintiffs argue that the presence of the improved driveway, Johnson's knowledge of the Mutual and Reciprocal Easement Agreement, together with his personal observation of the property prior to purchase provided constructive notice an easement existed. We agree.

[¶ 13] SDCL 17-1-4 provides:

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

Notice of an easement may be imputed to a purchaser.

"Notice of an easement is generally imputed to a purchaser where the easement is of such character that a purchaser acting with ordinary diligence would know or learn of its existence. Thus, where the easement is open and visible, the purchaser will be charged with notice even though the easement was created by a grant which was not then recorded. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry."

*Townsend v. Yankton Super 8 Motel, Inc.,* 371 N.W.2d 162, 165 (S.D.1985) (quoting *Wiege v. Knock,* 293 N.W.2d 146, 148 (S.D. 1980)).

[¶ 14] Constructive notice does not require the purchaser to ascertain the exact terms of an easement solely through circumstances. Rather, constructive notice requires the purchaser to make inquiry upon circumstances sufficient to raise the possibility an easement exists. *See* SDCL 17–1–4; *Townsend,* 371 N.W.2d at 165. *See also Steele v. Pfeifer,* 310 N.W.2d 782, 786 (S.D.1981). " 'If facts are sufficient to put a purchaser of a title or lien upon inquiry of any adverse right or equity of a third party, his want of diligence in making such inquiry is equivalent to a want of good faith.' " *Townsend,* 371 N.W.2d at 165 (quoting *Madson v. Ballou,* 63 S.D. 501, 505, 260 N.W. 831, 833 (1935)).

[¶ 15] In this case, Johnson personally observed the existence of the curb cut and the improved driveway prior to purchasing the property. He clearly was aware vehicles passed between the lots. This was based on his inspection of the lot, his observation of the lot when driving past, and his observation of the open and visible use of the driveway by gas station customers. There was no ambiguity as to the purpose of the driveway or the manner in which it was used. His observations alone were sufficient to place a prudent purchaser on notice of the possibility the lots were burdened and benefited by the driveway. Johnson was also aware of the Mutual and Reciprocal Easement Agreement between CPC, Hegg and Nelson creating a shared driveway on the western boundary of Lot E. Despite these circumstances, he made no inquiry as to the nature of the common driveway adjoining Lots C, E and F or the possibility an easement existed.

[¶ 16] The presence of a curb cut and improved driveway did not, in and of itself, put Johnson on notice of an easement between the lots. However, SDCL 17–1–4 requires inquiry with reasonable diligence when circumstances indicate the possibility of such an easement. *See* SDCL 17–1–4; *Townsend,* 371 N.W.2d at 165. Prior to purchase, Johnson made no inquiries concerning the driveway. A prudent purchaser should have made inquiry of the use of the common driveway after observing traffic pass through the driveway and after having been made aware of the existence of an easement on the western boundary of the property. His delay in inquiring until the construction project increased the use of the adjoining driveway is not consistent with the actions of a prudent buyer.

In light of Johnson's knowledge of the curb cut and improved driveway, the open and visible manner in which he observed the flow of traffic through the driveway prior to purchase and his acquiescence in an easement to share a driveway with the adjoining lot to the west for the purpose of accommodating traffic flow, we hold SDCL 17–1–4 charges Johnson with constructive notice of the fact Lots C, E and F are burdened and benefited by an easement for ingress and egress by way of the improved driveway adjoining the properties.

[¶ 18] **II. Whether the trial court erred in finding that no limitations existed on the terms of the easement.**

[¶ 19] Johnson contends the easement sought to be enforced by Plaintiffs terminated of its own accord because the easement's limitations were not enforced. The trial court found that no limitations existed on the terms of the easement.

[¶ 20] Paragraph 5 of the purchase agreement between Hegg and CPC provides:

That any portion of the Real Estate on the southern boundary in an amount not less than what currently exists in Lot D of Tract 2 shall be used solely for parking, driveways, and sidewalks. This covenant of Buyer is intended to provide clear passage of vehicles through the southern portion of Lots B, C, and D of Tract 2, consistent with the present layout of Lot D.

Paragraph 6 provides:

The Seller shall require the covenants of Paragraph 5 on any real property which is owned by the Seller and developed in Tract 2. If such covenants are not required by the Seller, the Buyer shall be

released from the covenants as required by Paragraph 5.

[¶ 21] Johnson interprets these paragraphs to require a portion of the southern boundary of Lots C and F be dedicated solely for parking. He contends the easement terminated of its own accord because the limitations of the easement mandate termination if the covenants have not been enforced as to all the properties developed in Tract 2.

[¶ 22] It is well established that "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." SDCL 43–13–5. Absent a limitation set forth in the easement, either in years or contingent upon the happening of some event, an easement is permanent in nature unless abandoned by nonuse. *Steele*, 310 N.W.2d at 786–87. *See also* SDCL 43–13–5.

[¶ 23] The trial court found no limitations on the terms of the easement created by the purchase agreement quoted above. However, a plain reading of Paragraphs 5 and 6 reveals Hegg's intention to impose the conditions of Paragraph 5 on all properties developed in Tract 2. As reflected by Paragraph 6, failure to enforce these requirements on all properties in the tract removes the obligation to comply with the easement from the other Tract 2 properties. Paragraph 6 clearly indicates Hegg's intention to develop a campus-style commercial development with free-flowing traffic between the lots. Thus the trial court's determination that no limitations accompanied the easement was in error. While we conclude the trial court erred in finding that no limitations on the easement existed, this error is without consequence because the limitations have been enforced.

[¶ 24] As has been noted, the properties in Tract 2 have been developed as a campus-style commercial development. The intent of Paragraph 5 was not to create a separate, mandatory parking area but rather to permit the flow of traffic between the various commercial properties. A reasonable reading of these paragraphs requires buildings on Tract 2 properties to be built away from the street with the intervening space used for parking, driveways and sidewalks.

The clear intent of Paragraph 5 was to "provide clear passage of vehicles through the southern portion" of the properties consistent with the campus-style development and allow for parking where necessary.

[¶ 25] All Tract 2 properties have been developed and maintained in accordance with the terms of the easement. The properties conform to the campus-style development and provide for passage of vehicles through the various lots. The easement established by the purchase agreement has not been abandoned and continues to serve its intended purpose and is in full force as to each Tract 2 property. The easement has not terminated of its own accord and continues to burden and benefit the properties.

[¶ 26] We have considered Johnson's other argument and find it to be without merit.

[¶ 27] Affirmed.

[¶ 28] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.