2002 SD 126

**Robert KOKESH and Joyce Kokesh, Plaintiffs and Appellees,**

v.

**Raymond RUNNING and Helen D. Running, Defendants and Appellants.**

**No. 22240.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Oct. 09, 2002.

John R. Frederickson, Deadwood, South Dakota, Attorney for plaintiffs and appellees.

Harlan A. Schmidt, Spearfish, South Dakota, Attorney for defendants and appellants.

GILBERTSON, Chief Justice.

[¶1.] Robert and Joyce Kokesh (Kokesh) brought an action seeking a perma-

nent easement over property owned by Raymond Running (Running) and Helen Running (now deceased). The circuit court entered judgment for Kokesh and against Running, finding the existence of a prescriptive easement over a driveway serving Running's farm house north of Spearfish which was used for access to the Kokesh' garage adjacent to the farm's driveway. Running appeals the circuit court's decision. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Running and Kokesh are the owners of neighboring tracts of land located in Spearfish, South Dakota. Kokesh, owner of Lot 8–C, has a backyard that adjoins the south boundary of Running's farm. The farm driveway passes the rear lot line of the Kokesh house, and Kokesh used this driveway to access one of their garages, which is located behind the house. The predecessors-in-interest to the Kokesh property are as follows:

A. Lawrence and Olive Johnson (Johnson) from 1943 or 1944 to 1987.

B. Dr. Jay and Elizabeth Schmidt (Schmidt) from September 8, 1987 to May 18, 1991.

C. Alfred Beck (Beck) from May 18, 1991 to July 29, 1991.

Kokesh purchased the property on July 29, 1991.

[¶ 3.] Running purchased the property on June 6, 1989, from Homestake Mining Company (Homestake) after farming it as tenants. The land is now owned by the Raymond T. Running Revocable Trust and the Helen D. Running Revocable Trust.

[¶ 4.] According to Dave Johnson, son of Lawrence Johnson, who grew up on the property while owned by his parents, his father used the road in question on a daily basis beginning in 1944. Johnson used the road for accessing the home and the park-ing area and hauling materials for the construction of various outbuildings, garages, and a fuel storage tank. Johnson testified his father never received permission from Homestake to use the road nor to his knowledge, did his father ask permission to use the road. Furthermore, Homestake did not place any signs or restrictions on the use of the road.

[¶ 5.] Sometime between 1962 and 1965, Lawrence and Dave Johnson hauled in a garage and faced its opening to the north where the only entry was by the access road in dispute. Additionally, Johnson removed a fence, built a camper pad on the west side of the garage and used the access road to haul the needed materials, including delivery of the cement by the cement truck. Sometime during this period, an asphalt pad next to the garage was also constructed.

[¶ 6.] When Schmidt moved onto the property in 1987, he used the road on a few occasions for that move and cleaning tree trimmings from the yard. Dr. Schmidt testified that he believed there was never any question of using the driveway for access to his garage and thus, never sought permission from Running to use the driveway. Schmidt lived on the property for four years until it was sold to Beck.

[¶ 7.] The next owner of the property, Beck, had a working relationship with Kokesh. Kokesh testified that on several occasions he used the road to haul materials for Beck's greenhouse, which was located behind the rear garage. He also used the road to haul his sister's car into the garage to be repaired. In 1991, Kokesh purchased the property from Beck and has resided there since.

[¶ 8.] During the ownership of the property by Kokesh, the access road was routinely used for various reasons. Uses included hauling materials for the green-

house, gardening equipment, supplies, removing garden debris, hauling trash from the neighbor's yard, parking RV's on their property, and for winter activities like snowmobiling. Furthermore, the local fire department, ambulance, morticians, UPS, Federal Express, and City of Spearfish have used the road continually over the years.

[¶ 9.] In 1998, there arose a dispute over a payment between Running and Kokesh concerning the care of Running's wife at the Kokesh Rest Home. Following this dispute, Running fenced the south boundary of his property, cutting off the use of the road by Kokesh to access the north garage and adjacent areas. Kokesh then brought an action seeking to obtain a permanent easement over the access road on Running's property. The trial court granted Kokesh the requested permanent easement, finding that an easement by prescription existed. In its decision, the trial court found that the use of the road was "open, visible, continuous and unmolested for more than twenty years, such time period beginning as early as 1944 and continuing until [Kokesh was] prevented from using the driveway ... in 1998." Running appeals this decision and raises the following issues for review:

1. Whether the trial court erred in granting an easement in favor of Kokesh and against Running.

2. Whether the trial court erroneously entered judgment against the wrong Defendants.

### STANDARD OF REVIEW

[¶ 10.] We review the circuit court's findings of fact under the clearly erroneous standard. *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (citing *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (citing *In re Estate of O'Keefe*, 1998

SD 92, ¶ 7, 583 N.W.2d 138, 139)). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Id.* "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D. 1994) (citing *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 421 (S.D. 1980)). Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

### ANALYSIS AND DECISION

[¶ 11.] **1. Whether the trial court erred in granting an easement in favor of Kokesh and against Running.**

[¶ 12.] Easements may be created by written grants, pursuant to a plat or by force of law. *Knight v. Madison*, 2001 SD 120, ¶ 6, 634 N.W.2d 540, 542; *Cleveland v. Tinaglia*, 1998 SD 91, ¶ 18, 582 N.W.2d 720, 724; *Tan Corp. v. Johnson*, 1996 SD 128, ¶ 13, 555 N.W.2d 613, 616. If created by an express grant, its terms are controlled by the words of that grant, its physical size and nature of use. Who may use the easement cannot expand or enlarge it beyond the express terms of the grant of the easement. *Knight*, 2001 SD ¶ 6, 634 N.W.2d at 542 (citing *Townsend v. Yankton Super 8 Motel*, 371 N.W.2d 162, 165-6 (S.D.1985)). However, in an action concerning an easement by prescription, the existence and nature of the easement require a fact intensive review of past use together with an application of applicable statutes on the subject.

[¶ 13.] SDCL 15-3-1 provides:

No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within twenty years before the commencement of such action.

Kokesh must prove open, visible, continuous and unmolested use of the property for twenty (20) years. *Kougl v. Curry*, 73 S.D. 427, 432, 44 N.W.2d 114, 117 (S.D. 1950) (additional citations omitted). Once this is shown, the use will be presumed to be under a claim of right. *Id.* "The owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was permissive." *Id.* The burden, therefore, was on Running to show that the use was permissive.

[¶ 14.] The trial court found that Kokesh and his predecessors'-in-interest use of Running's property was open, visible, continuous and unmolested for more than twenty (20) years. This time period began running as early as 1944 and continued until Running installed the fence, blocking Kokesh's access to the road. The trial court also determined that the road was used without permission and under claim of right, adverse to the interest of Running.

[¶ 15.] In *Tan Corp.*, we held that a real property owner's personal knowledge

of a curb cut, an improved driveway, traffic flow thereon and his acquiescence thereto per SDCL 17–1–4, charged that owner with constructive notice that the realty was burdened by an easement for ingress and egress to adjoining properties. 1996 SD 128, ¶¶ 16–17, 555 N.W.2d at 617. Moreover, we held that such obvious physical creations as the curb cuts and improved driveway per SDCL 17–1–4 placed upon the owner the duty of reasonable diligence as to the possibility of an easement and the extent and any limitations thereon. *Id.*[1]

[¶ 16.] Herein, there is ample support in the record to support the trial court's findings. From 1944 to 1987, Johnson used the road daily without permission for farm purposes. The use of the road is further evidenced by the construction of a garage on the north edge of his property, with the only entrance facing the disputed road. Johnson additionally ripped out a fence, constructed an asphalt pad next to the garage and kept a fuel storage tank in the area. Neither Homestake nor Running objected to Johnson's use of the driveway area or his obvious intent to use the driveway to gain access to his garage. The record supports the trial court's conclusion that this use was under claim of right and adverse to Running's ownership of the property. The following use of the disputed road by subsequent owners, Schmidt,[2] Beck, and Kokesh, was also used

1. In *Knight*, the holder of an easement for ingress and egress to his property over a privately owned road constructed a gate to attempt to limit public access for the use of the private road. 2001 SD 120, ¶ 2, 634 N.W.2d at 542. The owner of the road being put on at least constructive notice of the existence of the gate, contested the right of an easement holder to so regulate access to the road. We held that the easement holder acquired no rights to regulate access by third parties to the private road and that authority

rested exclusively with the landowner as he had retained that right. 2001 SD 120, ¶ 8, 634 N.W.2d at 543.

2. Although Schmidt's use of the road was infrequent, the trial court found that he used it whenever needed and without the permission of Running. Furthermore, Schmidt's minimal use of the road is irrelevant because Johnson's use of the road from 1944 to 1987 fulfilled the statutory time period to create a prescriptive easement.

without the permission of Running. The evidence supports that these owners used the road whenever they wanted as a matter of right.

[¶ 17.] Running argues that the use of the road was permissive and not adverse. However, the trial court found, and we agree that Homestake or Running never gave permission for anyone to use the road. The record clearly establishes the trial court did not err when it found that no permission was ever sought or given by Running to use the road. Likewise, Running did not meet his burden in showing the use was permissive.[3]

[¶ 18.] **2. Whether the trial court erroneously entered judgment against the wrong Defendants.**

■ [¶ 19.] Running argues that because the property in question is now owned by the their trusts, the trial court erred when it entered judgment against Ray and Helen Running. However, throughout the proceedings, including the trial, Running referred to the property as his property and the road as his road. It is well-settled law that "[h]e cannot now assert a better version of the facts than his prior testimony." *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 16, 557 N.W.2d 764, 768; *see also Turner v. Weber*, 2001 SD 125, ¶ 14, 635 N.W.2d 587, 592; *Vaughn v. John Morrell & Co.*, 2000 SD 31, ¶ 36, 606 N.W.2d 919, 926. Furthermore, once an easement by prescription is established, it runs with the land, passing with successive owners. SDCL 43–25–30;

*Peterson v. Beck*, 537 N.W.2d 375, 378 (S.D.1995). Therefore, we find that this argument is without merit. For the foregoing reasons, we affirm the judgment.

[¶ 20.] SABERS, AMUNDSON, KONENKAMP and ZINTER, Justices, concur.

---

**3.** It appears from the facts that use of the strip was not limited to Kokesh and predecessors. Apparently it was used by numerous others as access to the Kokesh garage and property. While ordinarily such unlimited use could be subject to challenge as in excess of an easement, here Running did not seek upon appeal to this Court to limit the terms of the easement to the property owners and no one else. Thus, we are not called upon to determine if use of the land is limited to the property owner Kokesh or is extended to their invitees or the public at large. That portion of the trial court's decision as to the nature of the use is not subject to our review and the trial court's decision on that point becomes final.