2003 SD 98

WILDWOOD ASSOCIATION, a South Dakota not for profit corporation; John G. Spangler; John M. Weiss; Timothy L. Skinner and Donna L. Skinner; James A. Oswald and Helen I. Oswald; Daniel J. Finn, Jr. and Melinda Finn, Plaintiffs and Appellees,

v.

HARLEY F. TAYLOR, INC., a South Dakota corporation and Red Rock Development Company, LLC, a South Dakota Limited Corporation, Defendants and Appellants,

Leo Hamm Family Ranch, LLC, a South Dakota Limited Liability Company; Pennie Lou Slovek, Kellie Sue Weisgram and Shellie Lynn Parker, Defendants and Appellants,

The City of Rapid City, a Municipal Corporation, Defendant and Appellant.

Nos. 22538, 22539, 22540.

Supreme Court of South Dakota.

Argued April 29, 2003.

Decided Aug. 6, 2003.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for plaintiffs and appellees.

Terry G. Westergaard of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for appellants Harley F. Taylor and Red Rock Development Co.

Jerry D. Johnson of Banks, Johnson, Colbath & Kerr, Rapid City, South Dakota, Attorneys for appellants Leo Hamm Family Ranch, Pennie Lou Slovek, Kellie Sue Weisgram and Shellie Lynn Parker.

Adam Altman, City Attorney, Michael S. Booher, Assistant City Attorney, Rapid City, South Dakota, Attorneys for appellant City of Rapid City.

MEIERHENRY, Justice.

[¶ 1.] Wildwood Association (Wildwood) brought an action seeking declaratory judgment and injunctive relief against City of Rapid City (City), Harley F. Taylor, Inc. (Taylor), Red Rock Development Co., LLC (Red Rock), Leo Hamm Ranch, LLC (Hamm), and Slovek, Weisgram and Parker, daughters of Leo Hamm (daughters)(collectively Defendants). Wildwood petitioned the court to determine if the section line had been vacated, if the access easement was public and if the easement was appurtenant. While this action was pending, the City filed a condemnation action to take the easement at issue.[1] The trial court consolidated the actions for trial. Defendants appeal the trial court's findings (1) that the section line had been vacated, (2) that the access easement was a private easement and (3) that the private easement was for personal use. We re-

verse issue one and affirm issues two and three.

## FACTS AND PROCEDURAL BACKGROUND

[¶ 2.] Wildwood Subdivision was originally developed in 1977 and 1978. The actual plat of Wildwood was approved in 1978. The 1978 plat depicts a section line and the north thirty-three feet of the section line right-of-way between section 21 and section 28. The section line right-of-way between section 21 and section 28 was unimproved. The 1978 plat did not include any property south of the section line. The section line is the southern boundary to Wildwood lots 19, 20, 21, 22, and 23. The 1978 plat also indicates an access easement which runs across lot 23, which is owned by Daniel and Melinda Finn. The access easement and the section line highway are known as Shooting Star Trail.

[¶ 3.] On May 21, 1979, Wildwood was re-platted. Lots 18, 19, 20, and 21 along with other additions to Wildwood were platted and approved by the Common Council of the City of Rapid City. Although Wildwood was not annexed into the City at this time, it was within the City's three-mile extra-territorial jurisdiction. On the 1979 plat, neither the north nor the south section line right-of-way was shown. When the City annexed the Wildwood subdivision in 1984, the annexation map indicated the entire area to be annexed but did not show the section line.

[¶ 4.] The status of the section line and access easement became an issue when the City initiated a plan to annex Red Rock. In 1999, Red Rock began submitting development requests to the City. Red Rock proposed a 360–acre planned unit develop-

---

1. See *City of Rapid City v. Finn*, 2003 SD 97, 668 N.W.2d 324, 2003 WL 21805613 (S.D. 2003).

ment. The development consisted of 280 single-family lots and 80 multi-family lots plus an 18 hole golf course. In order for the City to provide municipal services including water and sewer to the development, Red Rock needed to be annexed. However, Red Rock was not contiguous to the City as required for annexation. To solve this problem, Red Rock approached Leo Hamm about annexing sixty acres of his property which adjoined Red Rock and the City. Ultimately an agreement was struck with Hamm in which Red Rock would pay him $50,000 in exchange for his acquiescence to annex sixty acres of his property. As part of the agreement, the City would grade the section-line road at issue along the northern boundary of Hamm's property to meet City specifications. Also the City agreed to acquire a public right-of-way across lot 23 from Wildwood to the section line road. On July 10, 2000, the City council passed a resolution indicating that it was in the public interest to annex the property. The City included in the resolution its intent to acquire the sixty-six foot wide easement on lot 23 and to dedicate the easement as a public right-of-way at the City's expense. The resolution also incorporated the City's promise to construct at least a twenty-eight foot roadway on the section line in accordance with City standards.

[¶ 5.] The residents of Wildwood first became aware of the proposed section line road when the City began construction. Wildwood Association commenced a declaratory judgment action seeking to ascertain the legal status of the section line and access easement and requested injunctive relief. The trial court ruled in favor of Wildwood finding that the section line easement had been vacated and that the sixty-six foot access easement was a private easement personal to Hamm and Taylor. Red Rock, Taylor, Hamm and the City appeal raising the following issues:

1. Whether the section line was vacated by the appropriate governmental authority.

2. Whether the trial court erred in finding that the access easement was private.

3. Whether the trial court erred in finding that the access easement was personal only to Hamm and Taylor.

## STANDARD OF REVIEW

[¶ 6.] Findings of fact are reviewed under a clearly erroneous standard. *City of Sioux Falls v. Hone Family Trust*, 1996 SD 126, ¶ 6, 554 N.W.2d 825, 826. "Clear error means, 'after a review of all the evidence,' we are left with a definite and firm conviction that a mistake has been made." *Id.; Fanning v. Iversen*, 535 N.W.2d 770, 773 (S.D.1995) (quoting *Cordell v. Codington County*, 526 N.W.2d 115, 116 (S.D.1994)).

## DECISION

1. Whether the section line was vacated by the appropriate governmental authority.

[¶ 7.] Defendants claim that the section line easement was not vacated because there was no affirmative action by the appropriate governmental authority. The trial court found that the section line was vacated by the Common Council of the City of Rapid City in connection with the approval of the 1978 plat and the subsequent annexation of the Wildwood Subdivision.

[¶ 8.] Historically, the section line was established by congressional action. In 1866, Congress declared that: " 'The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.' " *Costain v.*

*Turner County,* 72 S.D. 427, 36 N.W.2d 382, 383 (1949) (quoting § 8, Ch 262, 14 Stat 253, 43 USCA § 932). Thereafter the legislature of the Dakota Territory enacted Ch 33 SL 1870–1871 stating: "That hereafter all section lines in this Territory shall be and are hereby declared public highways as far as practicable...."[2] Today SDCL 31–18–1 provides:

> There is along every section line in this state a public highway located by operation of law, except where some portion of the highway along such section line has been heretofore vacated or relocated by the lawful action of some authorized public officer, board, or tribunal.

Every section line shall be sixty-six feet wide with thirty-three feet on each side of the section line. SDCL 31–18–2.

[¶ 9.] Neither party disputes that the 1978 plat clearly sets forth a section line and thirty-three feet section line easement dedicated to the public. However, the parties dispute whether the approval of the 1979 plat without the section line easement was sufficient governmental action to extinguish the section line easement. On the 1978 plat, lots 17–21 were drawn but not shown as platted. The 1979 plat depicted the lots as platted and clearly identified the section line running along the southern boundary of lots 19–21 but did not identify the section line easement. Wildwood claims that the approval of the 1979 plat vacated the section line easement shown on the 1978 plat.

[¶ 10.] In order for a previously recorded plat to be vacated by filing a new plat, compliance with the statutory requirements set forth in SDCL Ch 11–3 is necessary. SDCL 11–3–20.2 provides:

The new plat shall specifically describe all previous plats sought to be vacated including the book and page or document number of all existing plats in the register of deeds office. The new plat shall specifically state that all previous plats so listed are to be vacated in whole or in part. The new plat shall comply with the public highway provisions of § 11–3–17.

If a plat is filed and is intended to vacate a previous plat, the register of deeds shall write "vacated" across that portion of the plat so vacated and make reference on the plat to the volume and page number in which the instrument of vacation is located. SDCL 11–3–18. The 1979 plat is void of any marking vacating the 1978 plat. Furthermore, this Court recently stated in *Hofmeister v. Sparks,* that the filing of a new plat does not automatically vacate a prior plat. 2003 SD 35, ¶ 4, 660 N.W.2d 637, 639. Another case involving a dispute of whether a section line was vacated was *Millard v. City of Sioux Falls,* 1999 SD 18, 589 N.W.2d 217. In *Millard,* the city and county approved a "plat" which did not show the section line easement. This Court determined that the section line easement still existed because the county had not previously taken steps to vacate it. *Id.* at ¶ 16. We held that the "sectionline easement was created by operation of law and no affirmative action was taken to vacate it." *Id.* at ¶ 28. "[A]bsent annexation, specific affirmative action must be taken by an appropriate government authority to vacate a section-line right-of-way." *Id.* at ¶ 24. The mere approval of a plat by the county and city is not enough to vacate a section line. *Id.* at ¶ 16.

---

2. See Arthur L. Rusch, *Douville v. Christensen: An Answer to the Issue of Township Responsibility for the Improvement of Section Line Rights of Way,* 48 SD L Rev 247(2003) (discussing the existence of public roads along every section line and the issues of maintenance by the governing body).

■ [¶ 11.] Prior to the City's annexation, the County was the governmental entity with authority to vacate the section line. SDCL 31–18–3.[3] Before a County can vacate a section line, the law requires that the Department of Transportation must grant approval. SDCL 31–3–19. Once approval is obtained from the Department of Transportation, any change shall be noted on the map of the county highway system in the office of the county auditor and on the map in the Department of Transportation. SDCL 31–12–2. Here, there is no evidence of county action to vacate the section line. Therefore, the section line easement was still in existence as depicted on the 1978 plat when the property was annexed by the City in 1984.

■ [¶ 12.] Wildwood asserts that if the section line easement was not vacated prior to annexation, the City's annexation vacated it because the annexation map did not depict a section line right-of-way. The trial court, relying on *Hone*, determined that the City vacated the section line by annexing the property. 1996 SD 126, 554 N.W.2d 825. We find *Hone* distinguishable. In *Hone*, the City of Sioux Falls annexed Country Club Heights in 1952. *Id.* at ¶ 8. The Court found that prior to the annexation, the City of Sioux Falls had vacated the section line. *Id.* at ¶ 9. In the present case the section line was not vacated prior to the annexation proceeding.

[¶ 13.] Although the annexation map does not show the section line easement, SDCL 9–4–11 only requires a "map" of the territory. It states:

Whenever the limits of any municipality are changed by a resolution of the governing body or by a decree of court it shall be the duty of the mayor or the president of the board of trustees to cause an accurate map of such territory, together with a copy of the resolution or decree duly certified, to be recorded in the office of the register of deeds of the county or counties in which such territory is situated, and thereupon such territory shall become and be a part of such municipality or be excluded therefrom as the case may be.

The City submitted a map of the territory, it did not submit a "plat" of the territory to be annexed. Because the annexation map does not have the detail of a plat, the legal descriptions of the property annexed must be determined by examining the plat filed with the register of deeds for that parcel of property. Thus we must refer to the 1978 and 1979 plat which did not vacate the section line easement. Consequently, when Wildwood was annexed, the section line easement was still in existence. The City could not have vacated the section line easement by annexing Wildwood since the easement was still portrayed on the relevant plat of the property in question.

**3.** SDCL 31–18–3 provides:
The board of county commissioners may vacate or change the location of any section-line highway within its county and the board of supervisors of an organized township may vacate or change the location of any section-line highway within its township, as provided in this title, but neither board may vacate or change any portion of the state trunk highway system or any highway constructed by state or federal aid or any highway within the limits of a munici-

pal corporation, nor may a board of supervisors vacate or change any portion of the county highway system. In addition, no board of county commissioners or board of supervisors may vacate a section-line highway which provides access to public lands. This section does not prohibit the closing of a section-line highway to vehicular traffic if the highway is unsafe for vehicular traffic. For the purposes of this section, public land does not include any school and public lands.

[¶ 14.] To vacate the section line at the time of annexation, there needed to be some affirmative action on the part of the City. In *Millard,* the Court held that when the property was annexed to the city, the city vacated the section line by the affirmative action of establishing a street where the section line had been. 1999 SD 18, ¶ 23, 589 N.W.2d at 220. In the present case, the City took no action from which to infer that it intended to vacate the section line. We reverse on issue one.

2. **Whether the trial court erred in finding that the access easement was private.**

[¶ 15.] Defendants argue that the sixty-six foot easement running across lot 23 on the 1978 plat was impliedly dedicated to the public. The trial court found that the sixty-six foot access easement was a private easement. The question of whether an easement is private or public is a factual issue to be reviewed under a clearly erroneous standard. *Kokesh v. Running,* 2002 SD 126, ¶ 10, 652 N.W.2d 790, 793.

[¶ 16.] A dedication may occur by express grant or by legal implication. *Brown v. Bd. of County Comm'rs for Pennington County,* 422 N.W.2d 440, 442 (S.D. 1988) (citation omitted). A dedication is implied where "it arises by operation of law from the owner's conduct and the facts and circumstances of the case." *Tinaglia v. Ittzes,* 257 N.W.2d 724, 729 (S.D.1977) (quoting McQuillin, Municipal Corporations § 33.02 (3rd Rev.Ed.). "[W]hat amounts to a dedication by implication depends upon the facts of the particular case, and no hard and fast rule can be laid down as a guide for the courts." *Smith v. Sponheim,* 399 N.W.2d 899, 902 (S.D.1987) (quoting *Evans v. City of Brookings,* 41 S.D. 225, 229, 170 N.W. 133, 134 (1918) (citations omitted)).

[¶ 17.] Defendants contend that the dedication to the public is implied because the sixty-six foot easement connects the section line highway to Una Del Drive and Wildwood, both dedicated public streets. Defendants rely on *Atlas Lumber Co. v. Quirk,* 28 S.D. 643, 135 N.W. 172 (1912). In *Atlas,* this Court determined that when an unmarked space on a plat extends from an existing dedicated public street, the unmarked portion is presumed also to be dedicated to public use.

'Naturally the presumption is that one who records a plat and marks upon it spaces that appear to form no part of any platted lots dedicates the land represented by the spaces thus excluded to a public use;' and where there is left on a plat spaces not designated as a street, but which follow the line of a river, or where they follow the line as apparent extensions of other streets already in existence, it is held to constitute a dedication as a street of the undesignated portion of the plat.

*Id.* at 174–75 (citations omitted). In *Selway Homeowners Ass'n v. Cummings,* 2003 SD 11, 657 N.W.2d 307, we determined that a right-of-way labeled 66' R.O.W. (Future Use) was not dedicated to the public. We held that the presumptions set forth in *Atlas* did not control as there was ."convincing proof of contrary intent by a grantor." *Id.* at ¶ 23. A careful analysis of the plat in *Selway,* indicated that the 'future use right-of-way' was not dedicated and was separate from the dedicated main road. *Id.*

[¶ 18.] The presumptions in *Atlas* are inapplicable here as well. The plat clearly indicates that the sixty-six foot right-of-way was not dedicated to the public. The plat specifically lists Wildwood Drive, Alpine Court, Greenleaf Court and Vanishing Trail Court as dedicated public right-of-ways. The section line easement is dedi-

cated to the public with specific language on the plat that states, "area dedicated to the public right-of-way." In contrast, the sixty-six foot access easement is not included in the list of roads dedicated to the public nor is there any language on the plat near the access easement suggesting that the access easement was dedicated to the public. Notably, the access easement is clearly distinguished from the dedicated public roads. It does not follow a line indicating an extension of already existing streets, and it is marked on the plat as part of lot 23. If it was dedicated for public use, the intention to dedicate had to be clear and may be shown by "deed, words, or acts." *Sponheim,* 399 N.W.2d at 901. Evidence at trial revealed that Hamm, one of the individuals who signed the 1978 plat, publicly stated that it was a "private easement" "set up for people who had property back there to access it." Around 1985, Hamm had tried to purchase the private easement from the owners of the lot in order to dedicate it for public use. Also, the city attorney at a public meeting made statements that "their research indicated it was a private easement."

[¶ 19.] The evidence failed to establish that the sixty-six foot access easement across lot 23 was dedicated to the public. We affirm the trial court on issue two.

### 3. Whether the trial court erred in finding the access easement personal only to Hamm and Taylor.

[¶ 20.] An easement may be created by written grants, pursuant to plats or by force of law. *Kokesh,* 2002 SD 126, ¶ 12, 652 N.W.2d at 793 (citing *Knight v. Madison,* 2001 SD 120, ¶ 6, 634 N.W.2d 540, 542; *Cleveland v. Tinaglia,* 1998 SD 91, ¶ 18, 582 N.W.2d 720, 724; *Tan Corp. v. Johnson,* 1996 SD 128, ¶ 13, 555 N.W.2d 613, 616). The servitude of an easement is

controlled by the terms of the grant and nature of use. *Knight,* 2001 SD 120, ¶ 6, 634 N.W.2d at 542. "[N]either the physical size nor the purpose or use to which an easement may be put can be expanded or enlarged beyond the terms of the grant of the easement." *Id.;* See *Townsend v. Yankton Super 8 Motel,* 371 N.W.2d 162, 165–66 (S.D.1985). An easement created by an express grant is controlled by the words of the grant, its physical size and the nature of use. *Knight,* 2001 SD 120, ¶ 6, 634 N.W.2d at 542. "The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement." SDCL 43-13-3. An easement appurtenant runs with the land and serves the dominant estate. 25 Am-Jur2d Easements and Licenses § 10 (updated 2003).

[¶ 21.] In order to determine the nature and extent of the easement, we look to the terms of the grant, the plat, and the nature of its use. When Ted Hamm, the original owner, transferred the property, the terms of the grant as expressed in the addendum to the 1977 purchase agreement, indicated that the seller wished to reserve and improve the easement.

> The buyers agree the seller may reserve on the above described property, a 66' easement starting at the SW corner of Una Del Drive, running southwesterly along the existing trail 150' to the south line of said Section 21.

> As further consideration, Buyers agree to allow Seller the use of Buyer's bulldozer to improve the above easement for a period not exceeding four (4) hours in duration at a time convenient to Buyers. Seller agrees to direct the operations of said work.

Although the addendum permitted the seller to reserve the easement, the warranty deed from Ted Hamm to Finn's predecessors made no reference to the easement

nor did it specifically define a reservation to the seller. The 1978 plat showed the easement and labeled it a "66′ access easement." None of the written instruments identify a dominant tenement to which the easement is appurtenant.

[¶ 22.] Hamm asserts that the easement is appurtenant to all land west of Wildwood Subdivision. Taylor and Red Rock assert that the dominant tenement is west and south of the access easement. The party claiming the easement has the burden of proof. *Cf. Thompson v. E.I.G. Palace Mall, LLC,* 2003 SD 12, ¶ 14, 657 N.W.2d 300, 305 (to establish an easement by implication from prior use the burden of proof is on the claimant). Neither the addendum to the purchase agreement nor the original plat identifies a dominant tenement. Hamm, Taylor and Red Rock failed to identify the dominant estate beyond unsupported vague generalities. Additionally, the access easement was marked by a private drive sign and had a chain blocking its entrance indicating it was for personal use only. The trial court found that the use of the easement was limited to Leo Hamm and his immediate family and Harley Taylor and his immediate family only to access the properties they own in section 28 and section 21. Based on the evidence, we cannot say the trial court erred in finding that the sixty-six foot access easement was a private easement for personal use. We affirm the trial court on issue three.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, and SRSTKA, Circuit Court Judge, concur.

[¶ 24.] SRSTKA, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.